## Western Union Telegraph Company v. P. F. Anderson.

### Decided December 9, 1903.

**1.—Telegraph—Negligence—Causal Connection.**

Facts considered and held to support conclusion that negligent delay in the delivery of a message prevented plaintiff from attending the funeral of his father.

**2.—Telegraph—Damages—Mental Suffering—Interstate Law.**

A resident of another State may recover in the Texas courts damages for mental suffering from failure to attend the funeral of a parent in Texas through negligent delay in the delivery of a telegram, though such damages were not recoverable by the law of the State where he resided and received the dispatch.

Appeal from the District Court of McLennan County. Tried below before Hon. Sam. R. Scott.

*Clark & Bolinger* and *J. A. Kibler,* for appellant.

*John S. Patterson* and *J. E. Yantis,* for appellee.

KEY, ASSOCIATE JUSTICE.—This is a damage suit resulting in a judgment in favor of the plaintiff, and the defendant has appealed. There is testimony in the record which supports the following conclusions of fact, which were found by the trial judge and are adopted by this court:

"1. Plaintiff's father, J. M. Anderson, died at about 5 o'clock a. m., March 14th, about eight miles from the town of Taylor, Texas, in Williamson County. He suicided by hanging, and was at once removed to his home in said town of Taylor.

"2. At about 4 o'clock p. m. on March 14, 1902, plaintiff's brother, B. J. Anderson, caused J. A. Kirkman to send the following message to plaintiff: 'Taylor, Texas, March 14, 1902.—To P. F. Anderson, Checotah, Ind. Ter.: Father killed himself this morning about 5 o'clock. (Signed) B. J. Anderson.' Said message was delivered to defendant's operator at Taylor, Texas, by Mr. Kirkman, and 70 cents was paid for the transmission and delivery of same for plaintiff's benefit to said town of Checotah, where plaintiff was temporarily residing, his home being in Texas.

"3. Said telegram was delivered to the plaintiff's wife, and received by her for the plaintiff about 4:30 p. m. on the 15th day of March, 1902, and by her delivered to plaintiff about thirty minutes later.

"4. Checotah was a small town and plaintiff was well known by most all of the business men there, and was known by the defendant's agent at said town, and plaintiff's residence was known and he was personally known by the defendant's messenger boy who delivered the message.

"5. By the exercise of ordinary care said telegram could and would have been delivered to plaintiff within one or two hours after its deliv-

ery for transmission to the defendant's agent at the said town of Taylor, Texas.

"6.   If the message had been delivered promptly and with due care, plaintiff could have boarded a south-bound train at Checotah at 9:37 p. m. on March 14, 1902, and would have reached the town of Taylor on March 15, 1902, at about 2:25 p. m., and that he had means to secure transportation and would have left Checotah at 9:37 p. m. March 14, 1902, and would have arrived at Taylor at 2:25 p. m. on March 15, 1902.

"7.   Plaintiff's father was buried in the town of Bruceville, Texas, and the remains left the town of Taylor going north at 4:30 or 5 o'clock p. m. on March 15, 1902, and he was interred in the town of Bruceville at about 6:30 or 7 o'clock on said date.

"8.   If the message had been delivered with due care, plaintiff could and would have arrived in the town of Taylor in ample time to accompany the remains of his father to Bruceville, to be present at his funeral, which he would have done.

"9.   That there was no train going south which plaintiff could have boarded after he received said message that would have carried him to Taylor, until late in the afternoon of March 16, 1902, and no train that he could have boarded after receiving said message that would have carried him to Bruceville until noon of said March 16, 1902.

"10.   The remains of plaintiff's father, at the time of his burial, had been kept out about thirty-six hours after his death, and had turned black and decomposition had so far set in as to render it improper and impracticable to longer delay the burial than was done.

"11.   Plaintiff would have learned on arriving at Taylor, that his father would be buried in the town of Bruceville.

"12.   The message was in words a sufficient notice to the defendant that plaintiff's father was dead, and that plaintiff would probably desire to attend the funeral.

"13.   Plaintiff sent the following message to his mother on March 15, 1902, at about 8 o'clock p. m., to wit: 'Checotah, Ind. Ter., March 15, 1902.—To Mrs. L. P. Anderson, Taylor, Texas: Can't come. Let me hear at once. (Signed) P. F. Anderson.' This message was sent subsequent to the burial of plaintiff's father, and was not in fact delivered to plaintiff's mother until several days after the burial, and after plaintiff's mother had returned from Bruceville to the town of Taylor, Texas.

"14.   That the message sent by plaintiff, referred to in conclusion 13, was not intended by plaintiff as a refusal to attend his father's funeral, but it meant to convey the idea that plaintiff had received the message sent him by his mother too late for him to get a train in time to attend his father's funeral, and further that he desired to know the particulars of his father's death.

"15.   Defendant breached its contract to send and deliver the message sent plaintiff by his brother, and in not delivering it on the after-

noon of March 14, 1902, an hour or two after filing for transmission.

"16. Defendant was guilty of negligence in failing to deliver the message to plaintiff on March 14, 1902.

"17. Plaintiff was not guilty of contributory negligence in failing to undertake to have the funeral delayed to a later day, nor in sending the telegram to his mother, but in both instances acted as a person of ordinary prudence would have acted under the same or similar circumstances.

"18. Under the laws of the Indian Territory, where the message was to be delivered to plaintiff, there can be no recovery for mental anguish in cases of this character.

"19. Plaintiff was especially devoted to his father, and suffered great mental anguish by reason of his failure to accompany the remains of his father from Taylor to Bruceville, and to be present at his funeral, which was caused by the negligence of the defendant."

*Opinion.*—The case is presented in this court on two assignments of error. The first assails the finding of the trial court to the effect that the failure to promptly deliver the message prevented plaintiff from attending the funeral of his father. While the telegraphic message sent by the plaintiff to his mother, soon after receiving the message announcing the death of his father, tends to support appellant's contention, the testimony given by the plaintiff supports the finding of the trial court on that subject.

Under the second assignment, the point is made that, as the message was to be delivered in the Indian Territory, and as the law in that jurisdiction does not authorize recovery in this class of cases for mental suffering, the judgment should be reversed. Recent adjudications in this State have settled the law against this contention. Telegraph Co. v. Waller, 74 S. W. Rep., 751; Telegraph Co. v. Shaw, decided by this court at a former day of this term.

No reversible error being shown, the judgment is affirmed.

*Affirmed.*

Writ of error refused.