### TITUS E. MERRIMAN ET AL. V. P. E. BLALACK ET AL.

#### Decided June 28, 1909.

**1.—Deed—Grantors—Variance in Names—Mexican Names—Absence of Acknowledgment—Act of 1907.**

In the body of a deed executed in 1853, the grantors were designated as "Francisco Balli and Toniasita Garzas, his wife;" the names signed to the deed were "Franco Balli y Cabasos" and "Tomasita Garza;" the deed was acknowledged by the wife as "Tomasita Garza," whom the officer certified to be "the wife of Franco Balli Cabasos, parties to the deed;" the deed was not acknowledged by the husband. Held:

(a) An objection to the admission of the deed in evidence because of the difference in the names of the grantors, as set out in the body of the deed and as signed thereto, was without merit, it having been shown that among Mexicans "Franco" was an ordinary abbreviation of Francisco, and the term "y Cabasos" was used to denote that the mother of the person was named Cabasos;

(b) The difference between the names "Toniasita" and "Tomasita," and "Garzas" and "Garza" was immaterial in view of the certificate of the officer that the person named was the wife of Franco Balli Cabasos;

(c) The failure of the husband to acknowledge the deed was cured by the Act of 1907 (Gen. Laws, 1907, p. 308) the deed having been on record since 1853 and no hostile claim to the land ever having been made.

**2.—Deed—Recitals—Separate Estate of Wife.**

A deed recited, in substance, that whereas the grantee, a married woman, was the owner of $500 of her separate property and in her right; and whereas the grantor had agreed to sell the land described in the deed for $500, therefore in consideration of the payment by said married woman of the said sum of $500, the said land was conveyed to her. There was no language expressly conveying the land to her in her separate right or as her separate estate. Held, the recitals in the deed were sufficient to vest the title to the land in the grantee as her separate estate.

**3.—Husband and Wife—Deed by Wife Alone, Void.**

A deed executed in 1854 by a married woman alone, without the joinder of her husband, was void.

**4.—Same—Consent of Husband—Evidence.**

While it is not essential that the husband join his wife in a conveyance of her land by the execution of the identical instrument executed by her, yet he must at least evidence his joinder in the conveyance by the execution of some instrument for that purpose. A mere recital in a deed subsequently executed by him that the land therein and thereby conveyed adjoins the land previously conveyed by his wife to the same grantee, is not a sufficient joinder to satisfy the requirements of the statute.

**5.—Same—Doctrine of Confirmation.**

A deed by a married woman without the joinder of her husband being void, it can not be validated by a recital in a subsequent deed by the grantor to the same land but to a different grantee after the grantor had become a feme sole, that said land had been previously conveyed by her to the grantee in the first deed. The doctrine of confirmation applies only to a voidable and not to a void estate.

**6.—Deed—Construction—Conveyance by Heirs.**

A deed considered as a whole and held to convey the interest of the grantors from whatever source such interest might have been derived. The recital that the grantors were all heirs of a certain ancestor was not equivalent to a recital that they were all the heirs of said ancestor.

**7.—Same.**

A deed by some but not all of the heirs of a former owner, considered and held, when construed in its entirety and in the light of the contemporaneous acts of the parties, to convey the land and not merely a chance of title thereto, and the whole title and not merely the undivided interests of the grantors. The language of a deed will be construed most strongly against the grantor.

**8.—Same—Recitals—Estoppel.**

Recitals in a deed can only be used by those claiming under that deed as an estoppel against the grantor. A married woman E., without being joined by her husband, executed a deed to M. to a tract of land, the same being her separate property; M. and the husband of E. were brothers; after the death of both M. and the husband, E. joined with others claiming to be the heirs of M. in a conveyance of the same land to G. in which deed it was recited that E. had previously conveyed said land to M. Held, the deed from E. to M. being void because of the nonjoinder of E.'s husband, the title to the land remained in E. and neither she nor her subsequent grantee G. was estopped to set up that fact as against the heirs of M.

**9.—Trespass to Try Title—Common Source—Outstanding Title—Evidence.**

While it devolves upon a defendant in trespass to try title, who pleads and proves outstanding title, to show further that said title had not in some way gotten into the plaintiff, this burden is discharged by proof that the plaintiff claims alone under and by virtue of a void deed to the alleged common source of title, and for this purpose the abandoned pleadings of the adverse party are competent evidence.

**10.—Limitation—Deed—Undivided Interest.**

A grantee in a deed conveying only an undivided interest can claim adverse possession under the five years statute of limitation of only the interest conveyed; and under the ten years statute, his constructive possession would be limited to the undivided interest conveyed.

**11.—Same—Registration of Deed.**

In order to prescribe under the five years statute of limitation the deed must

be duly registered; such registration requires that the record shall show that the certificate of proof or acknowledgment is sufficient.

### 12.—Same—Quitclaim Deed.

A quitclaim deed will support a claim of title under the five years statute of limitation.

### 13.—Testimony of Foreigners—Use of Interpreter—Unintentional Statement.

A single statement by a foreigner who testified through an interpreter, will not be cause for reversal of a judgment when it was evidently not made understandingly and was contrary to all the other testimony. When witnesses testify through an interpreter a greater latitude should be allowed in the form of the questions propounded.

### 14.—Deed—Description—Recital.

A declaration in a deed that the grantor intended to convey all of the land inherited from a certain ancestor, may serve to correct a misdescription of the land.

Appeal from the District Court of Hidalgo County. Tried below before Hon. W. B. Hopkins.

*D. B. Chapin, R. J. Swearingen* and *Don A. Bliss,* for appellants.— There was no sufficient evidence that the land in controversy in ·this suit was conveyed by Francisco Balli and wife to Mrs. Elizabeth Merriman, wife of E. T. Merriman, as her separate property. Harkness v. Devine, 73 Texas, 628; Adams v. Medsker, 25 W. Va., 127, 13 Cyc., 540.

Appellees and those under whom they claim, having acquired possession of the land in controversy under a deed from S. P. Fusselman and others, including Elizabeth Merriman, as heirs of Henry E. Merriman, conveying the land in controversy to Julio Guzman, Sr.. and reciting in the deed that the grantors were the heirs of Henry E. Merriman, and that the land had been prior thereto conveyed to Henry E. Merriman, appellees are now estopped to deny that Henry E. Merriman is a common source of title. Hardy v. DeLeon, 5 Texas, 244; Fisk v. Flores, 43 Texas, 340; Gonzales v. Batts, 50 S. W., 403; Martin v. Weyman, 26 Texas, 460; Kimbro v. Hamilton, 28 Texas, 561; Peters v. Clements, 46 Texas, 114; Polk v. Chaison, 72 Texas, 500; Carver v. Jackson, 4 Pet., 1; Crane v. Morris, 6 Pet., 509; Van Rensselear v. Kearney, 11 How. (U. S.), 323, 13 Cyc., p. 611.

The certified copy of the record of the instrument dated January 1, 1853, purporting in the body thereof to · be a deed from Francisco Balli and his wife, Toniasita Garzas, to Elizabeth F. Merriman, which appears to have been signed by Franco Balli y Cabasos and Tomasita Garza both by mark, was not admissible in evidence against appellants, and the recitals therein were no legal evidence as against appellants. Harkness v. Devine, 73 Texas, 628; Faver v. Robinson, 46 Texas. 204.

Even if it should be held that the certified copy of the record of the instrument mentioned in the immediately preceding proposition was admissible against appellants, still the recital therein that Elizabeth Merriman had $500 of her own separate money would not be sufficient evidence to overcome the presumption that the property was the community property of Elizabeth Merriman and her husband. Love

v. Robertson, 7 Texas, 6; Morris v. Hastings, 70 Texas, 26; King v. Gilleland, 60 Texas, 271; Huston v. Curl, 8 Texas, 240; Mitchell v. Marr, 26 Texas, 330.

There being no evidence before the trial court that no valid conveyance of the land in controversy had ever been made by Elizabeth Merriman to Henry E. Merriman, and it being recited in the deed under which appellees claim that said land had been conveyed to Henry E. Merriman, this recital, in the absence of any evidence to the contrary, was sufficient to show that said land had been conveyed by Elizabeth Merriman to Henry E. Merriman. Hardy v. De Leon, 5 Texas, 244; Fisk v. Flores, 43 Texas, 342; Kimbro v. Hamilton, 28 Texas, 568; McPhail v. Burris, 42 Texas, 142; Peters v. Clements, 46 Texas, 114; Polk v. Chaison, 72 Texas, 500; Corzine v. Williams, 85 Texas, 506; Carver v. Jackson, 4 Pet., 1; Crane v. Morris, 6 Pet., 609; Van Rensselaer v. Kearney, 11 How (U. S.), 323; Bush v. Cooper, 18 How. (U. S.), 82.

*Dougherty & Dougherty, Beasley & Beasley,* for appellees.—Abandoned pleadings evidence as admissions: Barrett v. Featherstone, 89 Texas, 567; Houston, E. & W. T. Ry. Co. v. DeWalt, 70 S. W., 531; Ogden v. Bosse, 86 Texas, 344; Watson v. First Nat'l Bank Itasca, 67 S. W., 314; Wright v. U. S. of Scotland Mtg. Co., 54 S. W., 369; Jordan v. Young, 56 S. W., 762.

Explanation of pleading does not affect its competency but its weight: Greif & Bro. v. Seligman, 82 S. W., 533; Galloway v. San Antonio & G. Ry. Co., 78 S. W., 32.

On proposition that recitals in deed are evidence of source of purchase money: McCutchen v. Purinton, 84 Texas, 604; Kahn v. Kahn, 94 Texas, 119; Maxson v. Jennings, 48 S. W., 781.

Plaintiffs having specially plead their title thereto, averring that they and defendants owned the land as tenants in common, plaintiffs owning an undivided 13-18 thereof and defendants the undivided 5-18 thereof, and that both plaintiffs and defendants claimed under Henry E. Merriman as a common source, there being no sufficient evidence introduced to show that defendants claimed the 13-18 undivided interest in the land sued for by the plaintiffs under Henry E. Merriman, the court below correctly concluded that Henry E. Merriman was not the common source of title as to the 13-18 interest in controversy, and plaintiffs having failed to prove their title, as alleged, the court could properly on this issue alone have given judgment in favor of the defendants. Hendricks v. Huffmeyer, 90 Texas, 575; Howard v. Masterson, 77 Texas, 41; Halley v. Fontaine, 33 S. W., 260; Greenwood v. Fontaine, 34 S. W., 827; Baldwin v. Goldfrank, 88 Texas, 249.

The execution by Eli T. Merriman, husband of Elizabeth F. Merriman, in 1860, of the deed to Henry E. Merriman, conveying a tract of land other than that in suit, was not a joinder by E. T. Merriman in the deed executed by Mrs. Elizabeth Merriman to Henry E. Merriman of date June 20, 1854, and therefore lent no validity to said deed executed by her. Art. 635, Sayles' Civil Statutes; Ford v. Ballard, 21 S. W., 146; Nolan v. Moore. 96 Texas, 343; Speer's Law of Married Women, 101.

The deed made to Henry Merriman in 1854 by Elizabeth Merriman, then a married woman, without being joined by her husband was a nullity, and the deed subsequently made by her, as a feme sole, in 1883, to Julio Guzman, was not intended by her to ratify or give validity to the deed made to Henry Merriman, and did not have the effect of giving validity to the deed nor passing title to the land. Breitling v. Chester, 88 Texas, 586; Montgomery v. Hornberger, 40 S. W., 629, 21 Cyc., 1326 and 1309; Ruppel v. Kissel, 74 S. W., 220; Carolina Bldg. & Loan Ass'n v. Black, 25 S. E., 976; Long v. Brown, 66 Indiana, 160; Kent v. Rand, 5 Atlantic, 760.

Appellants were not parties to the deed from S. P. Fusselman and others to Julio Guzman, neither did they claim under the deed, neither did the evidence show that they relied or acted on or even knew of the recitals in the deed; therefore defendants below were in nowise estopped from showing that the recital therein, to the effect that the land had been conveyed from Elizabeth Merriman to Henry E. Merriman, was not true, and that in fact the land had not been so conveyed. Love v. Barber, 17 Texas, 312; Illg v. Garcia, 92 Texas, 253; Williams v. Chandler, 25 Texas, 11; Bartell v. Kelsey, 59 S. W., 632; "Estoppel," 16 Cyc., 712, and Texas authorities cited under note 28.

If there was error in the trial court's finding that Henry E. Merriman was not the common source of title of plaintiffs and defendants, such was immaterial since, if he had been such common source, the defendants were in nowise precluded or estopped from proving that he and, consequently, plaintiffs had no title to the land, which having been done by evidence competent and sufficient in all respects, judgment could in no event have been properly rendered for plaintiffs against defendants in possesion of the land. Burk v. Turner, 79 Texas, 276; Rice v. St. Louis, A. & T. Ry. Co., 87 Texas, 90; Ferguson v. Ricketts, 93 Texas, 565; Scates v. Fohn, 59 S. W., 837; Jones v. Lee, 41 S. W., 196; Stubbelfield v. Hanson, 94 S. W., 406; Ellis v. Lewis, 81 S. W., 1034.

The recitals in the deed evidence: Burk v. Turner, 79 Texas, 276.

Execution and contents of deed may be established by facts and circumstances: Garner v. Lasker, 71 Texas, 435; Bounds v. Little, 75 Texas, 316; Crain v. Huntington, 81 Texas, 614; Clapp v. Engledow, 82 Texas, 290.

Recitals in ancient deed evidence: Watkins v. Smith, 91 Texas, 589; Brewer v. Cochran, 99 S. W., 1033; Hirsch v. Patton, 108 S. W., 1015; Sydnor v. Texas Savings Ass'n, 94 S. W., 452; J. M. Guffey Petroleum Co. v. Hooks, 106 S. W., 691; Maxson v. Jennings. 48 S. W., 785; Harrison v. Friar, 28 S. W., 250.

Abandoned pleadings evidence as admissions: Barrett v. Featherstone, 89 Texas, 563; Coles v. Perry, 7 Texas, 109; Houston, E. & W. T. Railway Co. v. DeWalt, 70 S. W., 531; Ogden v. Bosse, 86 Texas, 344; Watson v. Bank, 67 S. W., 314; Wright v. Mortgage Co., 54 S. W., 369; Jordan v. Young, 56 S. W., 762; S. P. Company v. Wellington, 57 S. W., 856.

Explanation of abandoned pleadings does not affect their competency, but only their weight. Greif & Bro. v. Seligman, 82 S. W., 533; Galloway v. San Antonio & G. Ry. Co., 78 S. W., 32.

None of appellants were parties to the deed from S. P. Fusselman and others to Julio Guzman; none of them claimed under the deed; there was no evidence whatever introduced on the trial that appellants or either of them ever relied or acted on the deed or any recital therein, or that any of them ever changed their position on account of the deed or its recitals; defendants therefore, claiming under the deed, were in nowise estopped from proving that the recital in the deed, to the effect that the land had been conveyed by Elizabeth Merriman to Henry E. Merriman, was in fact untrue. Burk v. Turner, 79 Texas, 276; Illg v. Garcia, 92 Texas, 251; Bartell v. Kelsey, 59 S. W., 631; Lumkins v. Coates, 42 S. W., 580; 2 Devlin on Deeds, sec. 995, 996, 992 and 997.

The deed from S. P. Fusselman and others to Julio Guzman purports on its face to convey the entire tract of land therein described, and is basis for the five years' statute of limitation. McDonough v. Jefferson Co., 79 Texas, 535; Parker v. Newberry, 83 Texas, 430; City of El Paso v. Ft. Dearborn, 74 S. W., 22; Schleicher v. Gatlin, 85 Texas, 270; Harris v. Bryson, 80 S. W., 105; Seemuller v. Thornton, 77 Texas, 156; Chamberlain v. Showalter, 23 S. W., 1017; Midkiff v. Stephens, 29 S. W., 154; Fowler v. Simpson, 79 Texas, 611; Wofford v. McKinna, 23 Texas, 43.

On the proposition that the deed from Dolores Longoria and husband was duly recorded within the meaning of the statutes of limitation, see Woodson v. Allen, 54 Texas, 551; Ballard v. Perry, 28 Texas, 348; Witt v. Harlan, 66 Texas, 660; Coffey v. Hendricks, 66 Texas, 677; Hines v. Thorn, 57 Texas, 104; Hart v. Patterson, 43 S. W., 545.

On the proposition that the deeds conveying an undivided interest would be the basis for limitation, see Acklin v. Paschal, 48 Texas, 147; Cole v. Grigsby, 35 S. W., 680; DeLeon v. McMurray, 23 S. W., 1038; Wofford v. McKinna, 23 Texas, 43; McDonough v. Jefferson County, 79 Texas, 535; Schleicher v. Gatlin, 85 Texas, 270.

The deeds from the heirs of Guzman to Blalack showed plainly on their face that grantors, as the heirs of Guzman, claimed the entire tract of land as their own, which was a repudiation of appellants' claim, and the record of the deeds furnished notice to appellants that their land was claimed adversely to them by Blalack under said deeds. Church v. Waggoner, 78 Texas, 200; Stubbelfield v. Hanson, 94 S. W., 409; 91 Texas, 340; 36 S. W., 333, and cases cited therein; Moody v. Butler, 63 Texas, 210; 66 S. W., 804.

REESE, ASSOCIATE JUSTICE.—In this suit Titus E. Merriman and others sue in trespass to try title to recover of P. E. Blalack and G. T. Hawkins the title and possession of an undivided thirteen-eighteenths of a tract of land described as the upper one-half of the upper league of a five-league grant called Agostadero del Gato, situated on the Rio Grande river in Hidalgo County, originally granted to Juan Jose Trevino. It is to be gathered from the recitals of the original answer of defendants, filed October 1, 1907, that the original petition was filed May 1, 1907. The date of the institution of the suit does not otherwise appear, as only the second amended petition of plaintiffs is in the record, which refers to the date of the first amended petition as October

2, 1907, but not to the date of the filing of the original petition. The plaintiffs claim title as heirs of Henry Merriman, the basis of such claim being that the land was the property of said Henry Merriman at his death, and that they as part of his heirs inherited from him .the thirteen-eighteenths thereof sued for. Title of defendants in fee simple to three-eighteenths, and their ownership of two eighteenths additional during the life of Elizabeth Merriman under the deed to Julio Guzman, Sr., seem to be conceded. Defendants pleaded general denial, not guilty and, under appropriate allegations, pleaded title under the statute of limitations of three, five and ten years. Plaintiffs specially pleaded common source of title in Henry Merriman and title in themselves under such common source to the undivided interest sued for.

The case was tried by the court without the assistance of a jury, and a judgment rendered for defendants, from which plaintiffs prosecute this appeal. The trial court prepared and filed conclusions of fact which, in the main and as to the material facts involved, are supported by the evidence. It is not necessary here to set out these conclusions in full. The following brief summary embraces the material facts established by the evidence:

1. The land in controversy is a tract of 762 varas base line river front, running back between parallel lines to the back line of El Gato survey of five leagues. The tract is the upper or western half of the upper or western league of said five-league survey which was originally granted to Juan Jose Trevino and was by him conveyed to Francisco Balli in 1834, and by Bali and wife on January 1, 1853, conveyed by deed to Mrs. Elizabeth Merriman, wife of E. T. Merriman.

2. The deed to Mrs. Merriman contains the following recitals: "Whereas Elizabeth Merriman of said county of Hidalgo is the owner of five hundred dollars of her separate property and in her right, and whereas the said Francisco Balli has agreed to sell the said portion of said tract or grant so by him purchased of said Trevino as aforesaid for said sum of five hundred dollars. Now, therefore," follow words of conveyance of the land to Mrs. Merriman, her heirs and assigns, in consideration of the payment by her of the said sum of five hundred dollars, not, however, in language conveying it to her in her separate right or as her separate estate. The trial court found that these recitals established that the land was paid for wholly by money belonging to Mrs. Merriman in her separate right and was her separate estate, and in this conclusion we agree.

3. On June 20, 1854, being then married to Dr. E. T. Merriman and living with him as her husband, Mrs. Merriman, by a deed executed and properly acknowledged by her as a married woman, conveyed the land referred to to Henry Merriman, but her husband did not join in the conveyance, nor did he ever afterwards by any subsequent instrument join with his wife in the conveyance of this land. After the execution of this deed Eli T. Merriman conveyed to Henry Merriman another tract of land adjoining the tract in controversy, in which deed he referred to the land he was then conveying as adjoining the tract sold by Elizabeth Merriman to Henry Merriman. No other title was shown in Henry Merriman than this deed, and the evidence

authorizes the conclusion, as found by the trial court, that he had no other title.

4. The deed from Balli and wife to Mrs. Merriman contained the further recital that the land had been conveyed to him by Juan Jose Trevino in the year 1834.

5. The deed from Mrs. Merriman to Henry Merriman contained the recital that the land had been granted by the Mexican government to Juan Jose Trevino and by Trevino to Francisco Balli, and by Balli to Mrs. Elizabeth F. Merriman.

6. It appears also that on March 5, 1878, the tax collector of Hidalgo County sold and conveyed to one Handy all the right, title, interest and estate of Henry Merriman in and to this land, and that on November 26, 1878, Handy quitclaimed it to Henry. Merriman, both deeds duly recorded.

7. Henry Merriman died in 1861, leaving as his heirs-at-law two brothers and one sister. Eli T. Merriman was one of the brothers, and he died in 1867, leaving surviving him his widow, Elizabeth Merriman, and certain children.

8. On July 9, 1883, Elizabeth Merriman, then a feme sole, and the following children of herself and Eli T. Merriman, to wit: Henrietta C. Fusselman (joined by her husband S. P. Fusselman), John C. Merriman, James E. Merriman, George Merriman and E. T. Merriman, by their deed of that date conveyed to Julio Guzman, in consideration of $487.08, "all our and each of our right, title, interest, estate, claim and demand in and to a certain tract of land situated in the County of Hidalgo, State of Texas," describing the land in controversy. The deed contains a recital that the land had been conveyed by the original grantee, Juan Jose Trevino, to Francisco Balli, by Balli to Elizabeth Merriman, and by her to Henry Merriman, "all of which appears of record in record books of Hidalgo County." The land is conveyed "with all and singular the hereditaments and appurtenances thereto belonging or in anywise appertaining; to have and to hold the above-described premises to the said Julio Guzman, his heirs and assigns forever," but has no warranty. After the names of the grantors in the body of the deed appears the following, "and being all heirs of Henry E. Merriman."

9. The grantors in the aforesaid deed are some of the heirs of Henry Merriman. The plaintiffs constitute all of the heirs except said grantors, and are entitled to thirteen-eighteenths of his estate.

10. Immediately after the sale by Elizabeth Merriman and others to Julio Guzman, in July, 1883, said Guzman went upon the land in controversy and built a pasture enclosing a part of the land in controversy, enclosing about 200 acres thereof on the south side of the tract adjoining and fronting on the Rio Grande. He claimed all the land in controversy in this cause from the time he went into possession thereof until his death, and had a field within said pasture. In 1883 he built a house on the western boundary of the tract in suit, and also put in a field in the northern part of said tract, and he cultivated the same continuously until his death in 1901; the house erected on the northern part of the land he occupied continuously through his tenants, and grazed large herds of cattle and horse stock on same, and also had

herds of sheep and goats thereon. The acreage in the tract varied considerably after the purchase thereof by Guzman by reason of the erosion and caving in of the Rio Grande river banks forming the southernmost boundary thereof, such caving and erosion shortening and cutting off the lower portion of the tract to the extent of about one-half mile to one mile. The acreage of the land in controversy is about 3,800 acres. Julio Guzman claimed to own the Santa Anna league, which adjoined the Gato league on the west, and in 1882 moved on the Santa Anna grant, erecting houses thereon, and continued with his tenants to live thereon until his death in 1901, and continued to use the land in controversy in connection with the Santa Anna land.

11. The wife of Julio Guzman died intestate prior to the death of her husband, who died intestate in 1901, leaving as his heirs his eight children, the survivors of whom, with the children of those since deceased, are his and her sole heirs-at-law.

12. After the death of Guzman his children and grandchildren remained in possession of the land claiming the whole of it as their own, cultivated, used and enjoyed the same, and had exclusive adverse possession thereof until they conveyed to P. E. Blalack, the defendant.

13. Blalack succeeded by regular deeds to the title of all of the heirs of Guzman. These deeds were executed and recorded at different dates, as follows: Deed of Amado, a son, dated February 8, 1902, recorded February 12, 1902; Dolores Guzman, a daughter, married to Longorio, and joined by her husband, dated March 4, 1902, and recorded March 14, 1902; Esterfana Guzman Garceres, a daughter, widow, deed dated February 3, 1902, recorded November 3, 1902; Librada Cantu, grandchild, deed dated February 10, 1902, recorded March 10, 1902; Prudencio Cantu, grandchild, deed dated February 8, 1902, recorded February 14, 1902; Adelaida Cantu, grandchild, deed to John Closner, dated July 13, 1907, recorded same day; deed from John Closner to Blalack, August 24, 1907, recorded same day; Pedro Guzman, a grandson, deed dated June 25, 1902, recorded same day; Manuel Garza, a grandson, deed dated February 8, and recorded February 14, 1902; Julia, Esterfana, Francisca, Jose, Rufino and Juan Garza, grandchildren, minors, by their guardian duly authorized, deed dated May 12, and recorded May 15, 1902; Ladislada Anaya, a granddaughter, deed dated February 10 and recorded February 19, 1902; Mariano, Nicholas and Jose Caceres, grandchildren, by their guardian, duly authorized, deed dated August 11, recorded August 12, 1902; Rufino, Guadalupe and Concepcion Guzman, grandchildren, by their guardian duly authorized, deed dated August 11, recorded August 12, 1902.

14. The grantors in the foregoing deeds were all the heirs of the said Julio Guzman and wife. The deeds referred to were all duly acknowledged and registered except the deed from Dolores Longorio, as to which reference will hereafter be made. The land is described in these deeds as 466 varas in width, base line river front, and extending north between parallel lines to the back line, with the addition that the grantors intended to sell, and did thereby sell, grant and convey to the grantee all of the land in the Gato grant inherited by the grantors from Julio Guzman and wife, either directly or through the deceased parent of grantor.

15. By deed dated February 3 and recorded March 13, 1903, Blalack conveyed to defendant Hawkins an undivided one-half interest in the land.

16. After the death of Julio Guzman, his children and grandchildren remained in possession of the land, claiming the whole of it as their own, and cultivated, used and enjoyed the same and had exclusive and adverse possession thereof until they conveyed the same to the defendant P. E. Blalack. When the defendant Blalack purchased the land from the Guzman heirs he went into the actual possession thereof, and the heirs who had not conveyed to him admitted him into possession with them and recognized his rights to the extent of the interests conveyed to him, and said Blalack recognized the right of the heirs who had not conveyed to him to the extent of the interest owned by them, and Blalack and the heirs who had not conveyed to him so recognizing each other's rights and interests in the lands, remained in the actual possession thereof, using, cultivating and enjoying the same and claiming the same as their own, adverse to the world, continuously up to the filing of this suit.

17. From and after the time Julio Guzman went into possession in 1883, taxes were regularly paid on the land year by year, as follows: In 1884 and 1885, 6,321 acres; 1886, 2,062 acres; 1887, 2,056 acres; 1888, 2,336 acres; 1889 to 1898, both inclusive, each year, 2,058 acres; 1898 and 1900, 611 acres; 1901, 500 acres; 1902, 1,751 acres; 1903 to 1907, both inclusive, each year, 4,404 acres. These taxes were paid by Julio Guzman during his lifetime and by his successors in the title after his death.

The court's conclusions of fact were all properly excepted to by appellants. Substantially all of the conclusions of fact and of law are attacked by the assignments of error, of which there are 48 in the record, followed by eighty-four propositions. These present, however, comparatively few questions material to a disposition of the appeal, and it will be more conducive to a clear understanding of the case, as presented, if we dispose separately of these questions instead of undertaking to dispose of the separate assignments of error and the propositions thereunder.

Appellees, to show outstanding title in Elizabeth Merriman and that the land was her separate property in case Henry Merriman is held to be common source of title, which is appellants' contention, offered in evidence the deed from Francisco Balli and his wife, Tomasita Garza, to Elizabeth Merriman, dated January 1, 1853, also the original record of such deed. This was objected to by appellants on the ground that the deed was not properly acknowledged, and that the names of the persons signing the instrument are different from the names of the grantors named in the body of the deed. This question is presented by the forty-fifth assignment of error.

The persons named in the body of the deed as grantors are Francisco Balli and Toniasita Garzas, his wife. The names signed to the deed are Franco Balli y Cabasos and Tomasita Garza, both signing by their mark. The deed was properly acknowledged by the wife as Tomasita Garza, whom the officer certified to be the wife of Franco Balli Cabasos, parties to the deed, but was not acknowledged by the

husband. The only objection presented by the proposition under the assignment is addressed to the difference in the names of the persons as set out in the body of the deed and as signed thereto. The objection is without merit. It was shown that Franco was an ordinary abbreviation of Francisco, and the term "y Cabasos" was ordinarily used to denote that the mother of the person was named Cabasos. The difference between the name of Toniasita and Tomasita, and Garzas and Garza, was immaterial in view of the certificate of the notary that the person named was the wife of Franco Balli Cabasos. It is clear that a mistake was made either in writing the deed or making the copy in the record, in the name of the wife as Toniasita Garzas instead of Tomasita Garza. That Balli had executed this deed is recited in the deed from Elizabeth Merriman to Henry Merriman, under whom appellants claim, executed in 1854, and in the deed to Guzman. The failure of Balli to acknowledge the deed, if the question was presented, was cured by the Act of April 23, 1907 (Acts Thirtieth Legislature, p. 308), the deed having been on record since 1853 and no claim hostile thereto having ever been made.

The recitals in this deed, which are set out in our conclusions of fact, show that the land was paid for by $500, the sole consideration, and that this money was the separate estate of Elizabeth Merriman, and this constituted it her separate estate. As showing that the parties so regarded it, it is shown that Mrs. Merriman afterwards undertook to convey the land to Henry Merriman by her own deed alone, in which her husband did not join. We agree with the conclusion of the trial court that the land was the separate estate of Mrs. Merriman.

The deed from Elizabeth Merriman to Henry Merriman executed in 1854, in which her husband did not join, was void. It is shown by the record that it was agreed that Mrs. Merriman was married to her husband, Eli T. Merriman, prior to 1854, and that they remained so married and lived together as husband and wife until his death in 1867. (Rev. Stats., art. 635; Cannon v. Boutwell, 53 Texas, 626; Ford v. Ballard, 1 Texas Civ. App., 376.) That the deed was void without the joinder of the husband if the property was Mrs. Merriman's separate estate is not controverted by appellants, but it is insisted that the statement in the subsequent deed from E. T. Merriman to Henry Merriman, conveying other lands, that the lands so conveyed adjoined the land conveyed by Mrs. Merriman to Henry Merriman, referring to the land embraced in the deed referred to, was such a joinder in the former deed from Mrs. Merriman to Henry Merriman as to satisfy the provisions of the statute. To this we can not agree. This statement can not even be taken as evidence that E. T. Merriman agreed or consented to the separate conveyance by the wife. The statement is made only for the purpose of showing the location of the land. The statute requires that "the husband and wife shall join in the conveyance." It was held in Cannon v. Boutwell, supra, that a power of attorney to convey a wife's separate estate, although clearly assented to by the husband, will be ineffectual if made by the wife alone." It has been held that it is not essential that the husband join in the conveyance by the execution of the identical instrument executed by the wife (Halbert v. Bennett, 26 S. W., 913; Nolan v. Moore, 96

Texas, 343), but there must at least be the execution by him of some instrument for the purpose of evidencing his joinder in the transfer of the title by his wife.

It is further insisted that this deed was validated by the subsequent ratification thereof by Mrs. Merriman after she became a feme sole. This contention is based upon the recital in the deed from Elizabeth Merriman, Fusselman and others to Julio Guzman, that the land had been conveyed by Elizabeth Merriman to Henry Merriman. The deed from Mrs. Merriman to Henry Merriman being clearly void, we do not think that this recital can be given effect as a confirmation, validation, or re-execution of it, so as to make it operative as a conveyance of Mrs. Merriman's title. This recital can not operate as a conveyance or a re-execution of the former void deed. (Breitling v. Chester, 88 Texas, 586). "Confirmation may make good a voidable or defeasible estate, but can not operate upon an estate void in law, but only confirms its infirmity." (1 Dev., Deeds, sec. 17; Branham v. San Jose, 24 Cal., 585; Chess v. Chess, 21 Am. Dec., 350.) There are no "apt words of conveyance" from Mrs. Merriman in the bare recital in the deed to Guzman that the land had been conveyed by Elizabeth Merriman to Henry Merriman along with the other recitals as to the chain of title so as to make it operate as a new grant, without which such recitals could not operate to impart to the void deed an efficacy it did not before possess. (Montgomery v. Hornberger, 16 Texas Civ. App., 28.) This deed to Julio Guzman, executed in 1883, purports in the body of it to be executed by Elizabeth Merriman (the widow) and Henrietta Fusselman (joined by her husband), John C., E. T., James E., George, Walter and J. D. Merriman, who, as we understand, were all of the children of Eli T. Merriman. The court however finds, and this appears to be true, that only Mrs. Merriman, Mrs. Fusselman (joined by her husband), John C., James E., George and E. T. Merriman executed the conveyance.

The terms and recitals of this deed are set out in the fact findings. This deed, after naming the parties, all of whom are stated to be heirs of Henry Merriman, and the consideration, proceeds: "Have bargained, sold and quitclaimed and by these presents do bargain, sell and quitclaim unto the said Julio Guzman all our and each of our right, title, interest, estate, claim and demand in and to a certain tract of land situated in said county of Hidalgo and State of Texas bounded and described as follows," followed by a full description of the land in controversy. The *habendum* clause is, "to have and to hold the above-described premises to the said Julio Guzman, his heirs and assigns forever." The concluding paragraph of the deed which, we think, is of some significance in determining whether the conveyance was intended by the parties to be limited to their interest as heirs of Henry Merriman, is as follows:

"And whereas the said J. D. Merriman is still a minor, now therefore we, the said S. P. Fusselman, his wife Henrietta C. Fusselman, Jno. C. Merriman, Geo. Merriman, Jas. E. Merriman, Mrs. E. T. Merriman and E. T. Merriman, do hereby bind ourselves, our heirs, executors and administrators to forever warrant and defend unto the said Julio Guzman, his heirs or assigns, the above-described premises

against any claim or claims that the said J. D. Merriman, or any one for him, may set up to said above-described premises. And it is expressly understood that the above and foregoing only extends to any claim by or for the said J. D. Merriman, and none other."

The parties are not stated to be all of the heirs of Henry Merriman, but only that all of them are his heirs. Looking to the entire deed, we take it to be intended to convey, and to convey, all the right, title and interest of the parties, and each of them, to the land described, from any source, and not to be limited to such right as they may have had as heirs of Henry Merriman. The terms of the warranty against claims that might be made by J. D. Merriman lends color to this view. The warranty is against any claims that he might make to any interest in the land, and not against such claim as heir of Henry Merriman, and clearly the warrantors would have been liable for such claims of title from any source, made by or in behalf of J. D. Merriman. Our conclusion is that the recital that the parties are all heirs of Henry Merriman can not be taken to limit the interest or title conveyed, but that as to this the deed must be construed as though such recital was not in the deed, and the language to have been used merely *descriptio personae*. It seems clear that if any of these parties had any title or interest which did not accrue to them as heirs of Henry Merriman, it would have passed by this deed, and they would not have been allowed to set it up against the grantee in the deed, or any one holding under him.

We are further of the opinion that notwithstanding the use of the word "quitclaim" the deed conveyed the land, and not a mere chance of a title. The language of the deed is in all material respects identical with that of the deed held in Garrett v. Christopher (74 Texas, 453) to convey the land itself and not be a mere quitclaim deed. Guzman certainly construed the deed as not conveying the undivided interests of the grantors as heirs of Henry Merriman, which was, at most, not quite five-eighteenths of the land, for he at once went into possession, claiming the whole tract, and in this claim persisted during the eighteen years of his occupancy, his claim being public, open and notorious, as shown by the practically undisputed evidence. He also paid the taxes on what he evidently supposed was the entire tract. The language of the deed must be construed against the grantors and in favor of the grantee, and the deed must be held to convey the largest estate which the language can be construed to convey.

It appears, however, that the grantors in this deed were some of the heirs of Henry Merriman, and it is contended by appellants that Henry Merriman was common source of title of themselves and those claiming under the deed to Guzman, and that the recitals in the deed that the land had been conveyed by Elizabeth Merriman are binding upon Guzman and those claiming under him, and they are estopped to deny them. If Elizabeth Merriman is estopped as against plaintiffs to deny the truth of the recital that she had conveyed the land to Henry Merriman, it might with some reason be said that Guzman and those claiming under him would be estopped. (2 Dev., Deeds, sec. 1284; Kinsman v. Loomis, 11 Ohio, 475.) But we do not know upon what principle she would be estopped except as to those claiming under the

deed. (2 Dev., Deeds, secs. 995, 996; Sunderlin v. Struthers, 47 Pa. St:, 423; Schuhman v. Garratt, 16 Cal., 100; Deery v. Cray, 5 Wall., 795; Robbins v. McMillan, 26 Miss., 434.)

The recital in the deed to Guzman as to the conveyance by Elizabeth Merriman to Henry Merriman, as well as the recitals in that and other deeds that Trevino had conveyed to Balli and Balli to Elizabeth Merriman, were evidence of the facts recited, and sufficient *prima facie* to establish them, but we do not think that they go farther than this. (Burk v. Turner, 79 Texas, 276; Bartell v. Kelsey, 59 S. W., 632; Wallace v. Pruitt, 1 Texas Civ. App., 236.) As to the conveyances from Trevino and Balli the recitals were not disputed and those deeds are a part of appellants' title, but to rebut this recital as to the deed from Elizabeth Merriman to Henry Merriman, whether such recital has the effect of *prima facie* establishing the fact recited, or upon the issue of common source of title in Henry Merriman and showing outstanding title still in Elizabeth Merriman, which neither she nor Guzman and those holding under him were estopped to set up, it was shown that the deed from her to Henry Merriman was void and left the title still outstanding in her. It was incumbent upon appellees further to show that this title had not in some other way gotten from Elizabeth Merriman into Henry Merriman. For this purpose appellees introduced in evidence certain allegations of a pleading filed by appellants in which this void deed was set up as the source of Henry Merriman's title. There was no attempt made to show that by any other conveyance Elizabeth Merriman had parted with her title. It is not denied that the pleadings were admissible, and they were for the consideration of the court, sitting as a jury, to determine their weight in connection with the testimony of counsel who had prepared the same, that it had been done without consultation with their clients. (Houston, E. & W. T. Ry. v. De Walt, 96 Texas, 121; Galloway v. San Antonio & G. Ry., 78 S. W., 34.) The introduction of the pleading in evidence was not objected to, and it was clearly admissible for the purpose of showing an admission of appellants that this void deed was Henry Merriman's only source of title. (Barrett v. Featherstone, 89 Texas, 567.)

We think the evidence fairly supports the conclusion of the trial court that the title was still outstanding in Mrs. Merriman and had not been acquired by Henry Merriman, unless it passed by her deed to Guzman. (Rice v. St. Louis, A. & T. Ry., 87 Texas, 90; House v. Reavis, 89 Texas, 626; Ferguson v. Ricketts, 93 Texas, 565.) Title from the sovereignty to Mrs. Merriman was shown by evidence of grant to Trevino, deed from him to Balli, and from Balli to her, of which the recitals in the various deeds, being uncontradicted, was sufficient evidence. In this state of the evidence we think that the court did not err in holding that appellants, plaintiffs in the suit, had failed to show title. Either there was outstanding title in Mrs. Merriman or her title passed to Guzman by the deed to him.

But if the court erred in this, we think it clear that the title of appellees under the statute of limitations of both five and ten years must be sustained. If the deed to Guzman conveyed only the undivided interest of the grantors inherited by them as heirs of Henry

Merriman, the limitation title can not stand. As to the five years limitation, Guzman could only claim adverse possession to the interest conveyed. (Acklin v. Paschal, 48 Texas, 147.) As to the ten years, the actual possession of Guzman, which was not greater in extent than' the undivided interests so conveyed entitled him to, would not give him constructive possession beyond the limits of his conveyance.

But we have held that the deed to Guzman conveyed the entire tract, and not an undivided interest therein. Under this deed, duly recorded in 1883, he took possession of the entire tract, openly and notoriously claiming it as his own. His enclosures and improvements were more than sufficient to support the claim of adverse possession under the statute of either five or ten years, and he paid the taxes regularly, year by year, and this adverse possession in Guzman continued from 1883 until 1901, when he died, and in those holding his title up to the filing of this suit in 1907. It might be argued that Guzman only paid taxes on the whole of the land for 1884 and 1885, the number of acres upon which he paid after 'that year being less than the number of acres in the tract as found by the trial court. But conceding this to be true, it would not affect his claim under the ten years statute. All of the elements of claim of adverse possession under the ten years statute existed without a break from 1883 to the date of filing the suit in 1907. This is the irresistible conclusion from the evidence if our construction of the deed to Guzman be correct.

Appellants contend that some of the deeds to Blalack from the heirs of Guzman were not recorded five years before the filing of the suit, and the court's findings of fact show this to be true, the date of such record of each deed being given; but this would only be material if appellee's whole defense under the five years statute rested upon adverse possession by them under those deeds. But this is not true, and even if Guzman, by reason of his failure to pay taxes on the entire acreage, had not, at the time of his death, perfected his title under the five years statute to the entire tract, he had so perfected his title under the ten years statute, and such adverse possession (under the ten years statute) with all the elements necessary to ripen his title, beginning in 1883, continued in him and those succeeding to his title, without a break, until the filing of the suit, a period of twenty-five years. The court finds that each of the heirs of Guzman continued in possession, claiming his or her particular interest, until conveyance to Blalack, and that Blalack at once, upon receiving a deed from such heirs, took and held possession under such deed, the joint owners each recognizing the title and possession of each other up to the time that appellees, by the successive deeds, acquired the entire Guzman title.

Mrs. Longorio, one of the married daughters of Guzman, conveyed to Blalack. The original deed was introduced in evidence, and from the certificate of acknowledgment it appeared that the deed was properly acknowledged by Mrs. Longorio and her husband. It appeared, however, that in recording this deed and the certificate of acknowledgment, certain essential words of the certificate were omitted. No objection was made to the introduction of the original deed as conveying Mrs. Longorio's title, but it is objected that the court erred in considering it as a duly registered deed as a support to the claim of title

under the five years statute of limitations. We agree with appellants that the deed can not be said to have been duly registered. Such registration, as we understand it, requires that the record shall also show that the certificate of proof or acknowledgment is sufficient. But this does not at all affect the claim of title under five years limitation resting upon Guzman's possession alone under the deed to him, nor does it at all affect the claim under the ten years statute. So the error complained of is immaterial.

If the deed to Guzman be held to be a mere quitclaim, it has been held that such a deed will support a claim of title under the five years statute. (Parker v. Newberry, 83 Texas, 430; McDonough v. Jefferson County, 79 Texas, 535; Wofford v. McKinna, 23 Texas, 43.)

By several assignments of error appellants complain of the admission of testimony of certain witnesses bearing upon the defense of adverse possession of Guzman. As the case was tried by the court, the same strictness in this regard is not required as upon a trial with a jury. Still, some of the testimony objected to should have been excluded, notably that of J. B. Wells as to his investigation of appellants' claim and his opinion, made known to them, that they could not recover the land. This testimony was clearly improper. Other testimony objected to seems to us to be conclusions of the witness and objectionable on that ground. But without discussing these several assignments separately, which we do not think necessary, the answer may be made to all of them, except that relating to the testimony of Judge Wells, that the facts testified about were abundantly supported by other unobjectionable evidence. It appears clear to us that the trial court could not have been influenced in his conclusions by any of the objectionable testimony, and this appears equally true as to the testimony of Judge Wells. Upon the issue of Guzman's possession the following admission was made by appellants:

"It is admitted by the plaintiffs that Julio Guzman, the grantee in the deed from Sam P. Fusselman and others which will be offered in evidence, in the years 1882-1883 entered into the actual possession of a part of the land sued for and fenced a portion thereof on the river in connection with a portion of a league of the Santa Anna grant claimed by him. That this enclosure was kept up and the lands therein continuously used and enjoyed during his lifetime, and by his children after his death until they sold the land to Blalack, and by said Blalack until he sold to Hawkins, and by Blalack and Hawkins as tenants in common ever since, and that continuously during said period of time from 1882 up to this time the defendants and their said predecessors in title claimed said land as their own and exercised ownership thereover.

"It is agreed that this instrument shall not be construed as an admission by the plaintiff that the defendants or their predecessors in title, or either or any of them, at any time in the past claimed or held the land in dispute, or any part of it, adversely to them, nor that the defendants, or their predecessors in title, claimed any part of the Santa Anna grant adversely to them."

The witness Julio Guzman, a Mexican who testified through an in-

terpreter, stated, in one part of his examination, that his father, Julio Guzman, Sr., did not claim any more land than was fenced, which he afterwards corrected. It appears to us that the above statement was not made understandingly. With this exception there is not in the entire testimony a whisper of recognition by Julio Guzman, Sr., of any other title to any part of the land, or that would tend to impeach the adverse claim on his part of the entire tract, and the open, notorious and public character of such claim. Appellants' contention that Guzman's claim to all of the land was not adverse to them finds no support in any part of the evidence.

In this state of the record we can not reverse the judgment for the errors in the admission of testimony referred to. Some of the witnesses whose testimony is thus objected to in some instances on account of the form of the questions, were Mexicans who testified and were interrogated through an interpreter, which required a greater latitude in their examination.

In view of what we have said there is no merit in the objection urged by appellants that the deeds from the heirs of Guzman to Blalack did not include the 296 varas in width, river front base line, on the eastward side of the tract. But we think that the additional provisions in each of these deeds, that it was the intention to convey all of the land inherited by the grantor from Julio Guzman and his wife, corrects what is evidently a misdescription of the land conveyed as to its width.

If it should be held that the deed to Guzman conveyed only the undivided interests of the grantors as heirs of Henry Merriman, which is not sued for but the title of appellees to which is conceded, what would be the result? In such case it could not be said that Henry Merriman was common source of title of appellants and appellees to the thirteen-eighteenths of the land here sued for. As to that, appellants do not and certainly could not claim title under Henry Merriman, and there would be nothing in the way of their defense as to the land sued for, or the interests therein, that the title was outstanding in Elizabeth Merriman. Appellants, deprived of the claim of common source of title in Henry Merriman, would be compelled to deraign title from the sovereignty, and this they failed to do, the deed to Henry Merriman, under whom they claim as heirs, being void. They could only bridge this gap by giving to the recitals in the deed from Elizabeth Merriman and others to Guzman, that she had conveyed the land to Henry Merriman, the force of an estoppel against Guzman, in favor of appellants, not parties to that deed nor claiming any rights thereunder. This deed, under the construction referred to, did not purport to convey the land sued for, and we think it utterly untenable that Elizabeth Merriman or appellees could be estopped by the recitals referred to to deny that she had conveyed the interests in the land here sued for. Appellants can not get the benefits of such construction of this deed to Guzman as would limit its effect to a conveyance by the grantors of their undivided interests as heirs of Henry Merriman, without taking the corresponding burden of such construction in the destruction of their claim that Henry Merriman was common source of title of themselves and appellees of the interest in the land sued for,

which under such construction appellees do not and can not claim under such deed, nor under Henry Merriman as source of title.

The objection that the findings of the trial court do not state where, on the land in controversy, the improvements were located, is without merit.

If these conclusions are not sound, and Henry Merriman could be considered common source of title of the land sued for, this did not bar appellees from showing that such common source did not have title, which, we think, was shown by the evidence of title in Elizabeth Merriman from the sovereignty, and that she has never parted with such title, leaving it, as we have before said, outstanding in her.

We have endeavored to pass upon every question presented by the appeal regardless of whether they are properly presented by the assignments of error. The record is not entirely free from error, but none of the errors are of such a character as to require a reversal of the judgment.

The various assignments and the propositions thereunder are overruled and the judgment is affirmed.

*Affirmed.*

Writ of error refused.