**LAMPIER et al. v. LEY et al.**

No. 1744.

Court of Civil Appeals of Texas. Eastland.

Jan. 28, 1938.

Rehearing Denied Feb. 25, 1938.

P. Harvey, of Houston, for plaintiffs in error.

Lewis Fogle, of Houston, for defendants in error.

FUNDERBURK, Justice.

The original plaintiffs in this suit, or some of them, after they, with possibly others (the record not clearly disclosing), had been made defendants in a cross-action, filed by the original defendants, took a nonsuit. The original defendants Homer E. Ley, Wendel D. Ley, and E. V. Ley will hereinafter be regarded and referred to as the plaintiffs, and Tucker Lampier, with a number of others, being the heirs of Marguerite Lambert, will be regarded and hereinafter referred to as the defendants. In the record and in this opinion the name "Lampier" is used interchangeably with "Lambert," and the name "Varrat" or "Varat" or "Vara" will be used interchangeably with the name "Berry."

The nature of the action is trespass to try title. Plaintiffs and defendants each, in addition to other title, specially pleaded title by three, five, ten, and twenty-five years' limitations. The land involved is a certain 100-acre tract on Green's Bayou near Houston, once owned by Marguerite Lambert, to whom it was conveyed by the deed of Antonio Varrat, dated February 2, 1857. Said Marguerite Lambert is the common source of title. Although the defendants pleaded not guilty, and filed no disclaimer as to any part of the 100 acres, there was in fact no controversy regarding the north 50 acres of the tract, but as to it, the plaintiffs conclusively proved title as to which there is no question. The controversy concerns only the south half, or 50 acres, and aside from the questions of limitation, involves the claim of defendants, as heirs of Marguerite Lambert to said 50 acres, or at least an undivided one-half interest therein. Upon a jury trial the judge gave a peremptory instruction in favor of the plaintiffs, and from the judgment rendered in accordance therewith, the defendants have appealed.

Of the 100-acre tract which on February 2, 1857, Antonio Varrat conveyed to Marguerite Lambert, the latter reconveyed the north half to said Antonio Vara, by deed dated December 9, 1859. This deed recited a consideration of $135 and described the interest conveyed as "all my right, title and interest into the northern half of a tract of land which the vendor has bought of Antonio Vara by deed dated February 2, 1857 and recorded on Harris County Record of Deeds, Book P, page 716, *one half of which said party of the first part has reconveyed to said Antonio Vara, party of the second part.*" (Italics ours.) The deed contained a general warranty of title to "the hereinbefore described premises." Explanatory of the above-italicized recitation in said deed, there appears in evidence a deed from Marguerite Lambert to Antonio Varrat, dated August 11, 1857, reciting a consideration of $100 and purporting to convey "one half of a tract of land conveyed by said Varrat to the said Lambert by deed dated February 2, 1857 containing 100 acres on Green's Bayou about 8 miles from the city of Houston. *This deed is intended to convey 50 acres of land.*" (Italics ours.) This deed also contained a general warranty of title referring to "the hereinbefore described premises."

By a general warranty deed dated November 16, 1910, Louis Berry, a son of Antonio Varat, conveyed the 100 acres in suit to G. W. Reed, who, by like means, on March 26, 1927, conveyed it to E. V. Ley; that being the title claimed by the plaintiffs.

It may be well at this place to consider the nature and effect of the deed of August 11, 1857, from Marguerite Lambert to Antonio Varrat. As said before, it purported to convey one-half of a tract of land conveyed by said Varrat to the said Lambert by deed dated February 2, 1857, containing 100 acres. Had there been no further description, the construction would perhaps be required that an undivided one-half interest was intended to be thus reconveyed, but it was further recited that, "This deed is intended to convey 50 acres of land." The subject matter of the general warranty was the "described premises." It seems to us that if this deed does not clearly show the intention of conveying 50 acres in severalty, it was at least ambiguous as to whether such was the intention, or whether the intention was to convey an undivided one-half interest in the tract, supposed to contain 100 acres. The subsequent deed of the same grantor to the same grantee, of December 9, 1859, clears up the ambiguity by making clear that it was the intention to convey one-half the 100-acre tract in severalty. The effect of the last-named deed

was to convey back to Varrat the "northern half" of the same 100-acre tract, and to declare that one-half of that tract had already been reconveyed. The presumption would be that by conveying the specific north one-half of the 100 acres and generally warranting the title thereto, there was no intention to include any land or interest which had been previously reconveyed, and hence the recital that one-half had been reconveyed could reasonably refer only to the other, or south one-half. The entire effect of the last-mentioned deed would appear to be to convey the north one-half of the 100-acre tract and to declare that the other one-half had already been reconveyed.

■ The deed of August 11, 1857, was ineffective as a conveyance. It furnished no means of identifying the 50 acres or one-half the 100 acres attempted to be conveyed. Continental Supply Co. v. Missouri, K. & T. Ry. Co., Tex.Com. App., 268 S.W. 444; Hanks v. Hamman, Tex.Com.App., 288 S.W. 143. But the recital in the subsequent deed that "one half" of the 100-acre tract "has been reconveyed" is itself, if not an estoppel against the heirs of Marguerite Lambert, the grantor, to claim the contrary, at least, evidence of such conveyance, and, we think, sufficient identification of the land so previously conveyed. "The recital in a deed of a particular fact is at least evidence against the parties to the conveyance and their privies." Burke v. Turner, 79 Tex. 276, 15 S. W. 256, 257; Corzine's Heirs v. Williams, 85 Tex. 499, 22 S.W. 399; Cope v. Blount, 99 Tex. 431, 433, 90 S.W. 868; Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552; Box v. Lawrence, 14 Tex. 545; Elliott v. Langham, Tex.Civ.App., 60 S.W.2d 287; Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743; Moss-Tate Inv. Co. v. Owens, Tex. Civ.App., 22 S.W.2d 1096.

■ It appears that the plaintiffs themselves introduced in evidence the ineffective deed. Under the view we take, that deed could serve no interest of plaintiffs except to make more certain the meaning of the recital in the subsequent deed, namely: "One half of which said party of the first part has reconveyed to said Antonio Vara, party of the second part." The ineffective deed makes clear, we think, that such recital in the subsequent deed referred to a previous transaction. Thus aided the recital has practically the same effect, prima facie, as a correction deed. It is said that: "Where the grantor, without court proceedings, executes a second deed containing a sufficient description, the correcting deed is effective between the parties * * *. The subsequent designation in the correcting deed of the land intended to be conveyed is binding on the grantor and all subsequent purchasers with notice." 14 Tex.Jur. 1003, § 213. As proof of plaintiffs' title the recital had the effect of relieving them of the necessity of producing other evidence of the conveyance. Had the recital so specified the ineffective deed as to rebut any presumption that there was any other, there would be ground for a plausible contention that the prima facie evidence furnished by the recital was rebutted by the further evidence that the deed referred to was void. But the recital is not necessarily qualified by the void deed. As frequently happens, it may have been discovered that the deed was ineffective and the defect corrected. The full and natural import of the recital is that one-half of the 100-acre tract, of which the grantor at the time conveyed the north half, had been reconveyed to Varat. In other words, by the conveyance of the north half, coupled with the recital that one-half had been conveyed, it is in effect declared that the grantor had then and theretofore conveyed the entire 100 acres back to Varat. This recitation coupled with a total absence of evidence that Marguerite Lambert, or any of her heirs, ever thereafter had possession of, or asserted claim to, the land until quite recently, and that the heirs of Antonio Varat had long had possession and claimed said land, seem to us to establish conclusively that plaintiffs had the title, and justified the trial judge in peremptorily instructing a verdict for them.

The great preponderance of the evidence showed that independently of other title, the plaintiffs had good title by limitation. It is difficult, however, to be certain that the evidence claimed by the defendants as sufficient to raise an issue of fact as to limitation should be held to be no evidence whatever. We would readily conclude that it was insufficient to support a finding that there was no bar of limitation, but that question is not before us.

We are of the opinion that the action of the trial court should be sustained on the ground that the evidence of title from the common source to the plaintiffs was conclusive and that therefore the judgment should be affirmed, which is accordingly so ordered.