**FINKELSTEIN et al. v. ROBERTS et ux.**
(No. 9226.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 21, 1920. Rehearing Denied April 3, 1920.)

1. Jury ⟨⟩25(6)—Answer to intervention not announcement of ready for trial nor waiver of jury.

Where defendants answered plea of intervention, at the same time demanding a jury and paying lawful fee therefor, though the jury for the week had been discharged, and only six days of the term remained after defendants' answer was filed, filing did not amount in law to announcement of ready for trial, nor waiver of right to trial by jury.

2. Continuance ⟨⟩23—Denial held not justified on ground desired evidence was immaterial.

In suit to cancel an oil and gas lease wherein plaintiffs' attorney intervened to enforce his contract for compensation, overruling of defendants' application for continuance *held* not justified on any ground that desired evidence of one defendant, tending to show that in his dealings with the lease he had merely acted for accommodation, would have been immaterial.

**3. Attorney and client ⊕═182(1) — Attorney employed to cancel lease not entitled to lien on defendant's interest.**

In suit to cancel oil lease executed by plaintiffs, husband and wife, wherein their attorney intervened to enforce lien on leasehold in hands of defendants, declaration of equitable lien on leasehold interest of a defendant in favor of attorney *held* erroneous in view of contract between attorney and plaintiffs, contemplating attorney should acquire no vested interest prior to forfeiture of lease and second lease for best price obtainable.

**4. Attorney and client ⊕═183 — No lien on cause of action, judgment, or money until collected.**

In Texas an attorney at law has not been given a general lien on a cause of action or judgment or money until collected and in his hands.

**5. Acknowledgment ⊕═7—Lease acknowledged by wife containing blank void despite authorization to fill in.**

Where an oil lease executed by husband and wife was acknowledged by wife while containing blank for description, lease was not operative, despite wife's parol authorization of a third person to fill blank, and was void where blank was subsequently filled in and no subsequent acknowledgment made by wife.

**6. Attorney and client ⊕═190(1) — Husband and wife ⊕═82—Attorney entitled to judgment against client, though client's wife not liable.**

If oil lease was an absolute nullity, breach of agreement by lessors, husband and wife, with their attorney, not to compromise suit to cancel lease without consent of attorney, entitled him to judgment against husband for damages if compromise was made with intent to deprive attorney of fee, though wife was not bound by agreement, not having power to contract.

**7. Attorney and client ⊕═190(3)—Defendants not liable to plaintiffs' attorney for breach of contract not to compromise.**

Husband and wife, suing to cancel their oil lease, had power to compromise suit without consent of their attorney, though they had contracted with him not to do so, and defendant lessees were not liable to attorney for such breach of contract by his clients unless in compromising defendants acted with wrongful purpose.

**8. Attorney and client ⊕═190(1)—Attorney intervening for compensation bound by clients' contract declared on.**

In suit to cancel oil lease executed by plaintiffs, husband and wife, wherein plaintiffs' attorney intervened to enforce his contract with them, declaring on agreement made by plaintiffs with defendant lessees, defendants cannot be held on such agreement except in accordance with its terms, including their stipulation to pay all claims as attorneys established against plaintiffs by suit or compromise, the compromise having established nothing against plaintiffs.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by J. E. Roberts and wife against M. B. Finkelstein and others, wherein J. A. Johnson intervened, resulting in dismissal of the suit of Roberts and wife, and judgment in favor of the intervener against defendants, from which defendants appeal. Reversed, and cause remanded for new trial.

R. L. Thompson, of Stephenville, and Theodore Mack and Phillips & Trammell, all of Ft. Worth, for appellants.

Chandler & Pannill, of Stephenville, for appellees.

CONNER, C. J. On January 16, 1918, J. E. Roberts and wife, Survelia Roberts, had their homestead on three separate tracts of land, aggregating 177 acres. The dwelling was upon a parcel of 3 acres, and the whole was the separate property of the wife.

On the day stated, L. C. Morton, acting for the benefit of M. B. Finkelstein, secured an oil and gas lease from J. E. Roberts and wife upon all of the land above described, except the 3 acres upon which the home was actually located. The lease is not set out in the record, but we assume it to be the ordinary oil and gas lease. The lease as executed and as acknowledged by husband and wife is in no way questioned, save that at the time of its execution the description of the land leased was omitted, a blank being left for its insertion. In this condition, Roberts and his wife gave the lease to L. C. Morton, with instructions to take it to one King in Stephenville and have him insert the proper description of the two tracts of land leased, with a typewriter, the deed under which the Roberts held the land being delivered to Morton for the purpose stated. Morton did as directed, and King, as directed, inserted in the blank left in the lease the proper description of the 174 acres of land leased to Finkelstein, but by mistake, as alleged, also included the 3-acre tract of land. Thereafter the lease was duly placed upon the records of Erath county. About a year thereafter, Roberts discovered that the 3-acre tract had been included in the lease to Finkelstein, and he thereupon went to the appellee in this case, J. A. Johnson, and after consultation with him, the following contract was entered into:

"State of Texas, County of Erath.

"This agreement made and entered into this the 8th day of January, 1919, by and between J. A. Johnson, party of the first part, and J. E. Roberts and his wife, Survelia Roberts, party of the second part, witnesseth: Party of the second part hereby employ party of the first part, who is an attorney at law, to bring suit for them and to seek to cancel a certain purported oil and gas lease between parties of the

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

second part and M. B. Finkelstein, dated the 16th Jan. 1918, purporting to lease for oil and gas purposes one hundred and seventy-seven acres of· land in Erath county, Texas, now owned by· parties of the first part and occupied by them as a homestead.

"It is agreed that party of the second part will immediately institute suit to cancel said oil and gas lease in the district court of Erath county, Texas, and that he will prosecute the same with due diligence, through all the courts to which it may be appealed.

"In consideration of said services it is agreed that if party of the first part succeeds in canceling said oil and gas lease that then said land is to be leased to other parties for the best price obtainable, and parties of the second part hereby assign and transfer unto party of the first part one-fourth of the proceeds of the lease money obtained by leasing said land, which assignment shall be made, and the money paid at the time said lease is executed.

"It is further agreed that in the event said suit is compromised or settled that then party of the second part hereby assign and convey unto party of the first part one-fourth of whatever amount of money is obtained by reason of said compromise and settlement.

"It is further agreed that parties of the second part will not settle or compromise said suit without the consent of party of the first part and that party of the first part shall pass upon all papers made in connection therewith, should a settlement be made, and party of the first part hereby agrees not to settle or compromise same without the consent of the second part.

"It being the intention of this agreement that party of the first part is to have one-fourth of the proceeds of the lease money on said premises either by suit, compromise or by settlement out of court.

· "Witness our hands this the 8th day of January, 1919.          J. E. Roberts.
          "Survelia Roberts.
          "J. A. Johnson."

Thereupon, Johnson, for and in the name of the Roberts, instituted suit, making both Finkelstein and L. C. Morton defendants to cancel the lease, as ground therefor alleging, in substance, the facts above stated, insisting that the execution of the lease in the blank form was a nullity, etc.

The defendants were duly cited, and on the 7th day of February thereafter negotiated with Roberts and wife for a compromise, and finally the parties entered into the following agreement in settlement:

"State of Texas, County of Erath.

"This agreement, entered into on this the 7th day of February, 1919, by and between J. E. Roberts and wife, Survelia Roberts, as first party and A. D. Morton and M. B. Finkelstein as second party witnesseth:

"First. For and in consideration of the payment of one thousand dollars in cash to first party hereto, the receipt of which is hereby acknowledged, paid by second party, and the further consideration that second party transfer by quitclaim deed the three acres of land described in a certain oil and gas lease dated the

16th day of January, 1918, first party herein as lessors and M. B. Finkelstein one of the second parties, as lessees, same being described as the third tract therein, the first party hereby agrees and contracts to dismiss a certain suit pending in the district court of Erath county, Texas, styled J. E. Roberts and wife, Survelia Roberts, plaintiff, and M. B. Finkelstein, A. D. Morton and L. C. Morton as defendants, at the costs of the defendants, the first party hereto agreeing and contracting to reaffirm and redeliver to second party a good and sufficient lease on the two other tracts of land described in the above lease aggregating 174 acres of land.

"Second. As a further consideration for the above and foregoing settlement second party hereby agrees and contracts to defend and save harmless first party from the payment of all attorneys' fees claimed to be due against them by reason of the filing of said above-styled suit, or by reason of any contract between first party and his attorney, binding ourselves as second party to pay all claims as attorneys established against first party by suit or by compromise.

"Third. First party agrees to dismiss and hereby specially instructs J. B. Keith, district judge of the 29th judicial district to dismiss the above styled and numbered cause from the docket of said district court.

"Witness our hands this the 7th day of February, 1919.   First Party:   J. E. Roberts. Survelia Roberts.   Second Party:   A. D. Morton.   M. B. Finkelstein."

Pursuant to this agreement Roberts and wife in due form and with due effect executed and delivered to Finkelstein a new lease of the same tenor as the original, except only that the lands described omitted the 3-acre tract upon which Roberts and wife lived. Also pursuant to this agreement a written direction signed by Roberts was transmitted to the district judge to dismiss the suit. Immediately following these proceedings Finkelstein and L. C. Morton, and A. D. Morton, all of whom it seems participated in the negotiations, left the town of Stephenville, and departed for their homes, the Mortons living in Oklahoma and Finkelstein in Houston.

The trial judge, it seems, declined to permit the dismissal of the suit, whereupon and for the first time J. A. Johnson, on the 11th day. of February, 1919, filed a plea of intervention, alleging the facts hereinbefore stated relating to the execution of the lease to Finkelstein, the agreement made between himself and J. E. Roberts and wife, the later compromise agreement made between them and Finkelstein, and averred, in substance, that the compromise had been made in fraud of his rights, and he prayed for a judgment for a one-fourth interest in the Finkelstein lease, or, if not entitled to that, that he have judgment for one-fourth of its value, which he alleged to be $15,000. Notice of. the plea of intervention was given to the defendants' attorneys, but no notice thereof was served on either Finkelstein or either of the Mor-

tons. The attorneys for the defendants wrote letters to the Mortons in Oklahoma, and Finkelstein in Houston, informing them of the plea of intervention, but received no reply from them. Nor does the record show that the letters were in fact received before judgment. The case, however, was called for trial on February 22, 1919. The attorneys representing defendants filed an answer, at the same time demanding a jury, paying the lawful fee therefor, and presented to the court a motion for continuance, alleging the facts of their nonresidence, that he had been unable to hear from them, and that he could prove by the witness L. C. Morton that he took the original lease from the Roberts as a mere accommodation to Finkelstein, that he had no personal interest in it whatever, and that the Roberts had directed him to fill the blank as hereinbefore stated. It was further alleged in the motion for continuance, that the Mortons resided in Bartlesville, Okl., and Finkelstein in Houston; that the Mortons left Stephenville on the 8th day of February; that on the same day Finkelstein paid the original costs of the suit, and also left for Houston; that Finkelstein and A. D. Morton would, if present, testify that they had no notice or knowledge of the facts alleged in plaintiffs' petition prior to the service of citation therein on them after January 10, 1919, and knew nothing of any claim of an intervention until about February 7, 1919, when they heard of it for the first time.

The court denied the defendants' application for a jury, overruled the defendants' application for a continuance, and, having dismissed the suit of J. E. Roberts and wife against the defendants, "announced ready for the defendants," and proceeded with the trial of the intervener's case. The trial resulted in a judgment against M. B. Finkelstein and the two Mortons in favor of the intervener for the sum of $13,050, to secure which the court decreed an equitable lien upon the oil lease held by Finkelstein, and the defendants have prosecuted this appeal.

[1, 2] We are of the opinion that the court erred as assigned, both in denying the jury and in overruling appellants' motion for continuance. It is true that the jury for the week had been discharged and but six days of the term of court remained after the answer of the defendants was filed, but it is to be remembered that the record fails to show that the defendants had any actual notice of the filing of the plea of intervention, and while the filing of the answer amounted in law to an appearance on the part of the defendants, it did not amount, we think, to an announcement of ready for trial, nor to a waiver of the right to a trial of the issues by a jury. The application for a jury was in due form and the necessary deposit of a jury fee made, and we know of no authority, and

none has been cited, for a trial judge to "announce" for a defendant ready for trial over the defendant's objection. The principal answer made by appellees to appellants' contention that the court erred in overruling the application for continuance is that the desired evidence would have been immaterial, but with this contention of appellees we feel unable to agree. If it be admitted, as appellees insist, that the fact that the original lease executed by J. E. Roberts and wife was left blank for the insertion of the description of the land, and that no acknowledgment on the part of the wife was thereafter made, entirely nullified the instrument, there yet remains for determination the issues presented by the intervener against the defendant L. C. Morton, against whom he not only prayed for, but actually recovered, a judgment. L. C. Morton would have testified, so the application for continuance states, that he procured the original lease as a mere matter of accommodation, having no interest whatever in the same, and that he delivered the original lease for the purpose of filling the blank, as he had been directed to do by Roberts and wife, and that he had no knowledge that the person to whom the lease had been delivered had erroneously included the description of the 3 acres. If so, we fail to see how it can be said that appellee was entitled to a judgment against him, it not appearing that L. C. Morton was a party to the compromise agreement upon which appellee declared. Under the circumstances, the mere fact that L. C. Morton participated in securing the lease, or even in securing the settlement with Roberts, can hardly be said to support appellees' cause of action as charged, particularly as the record fails to show that he had any actual knowledge of appellees' purpose to intervene in the suit.

[3, 4] We also think that the court erred in declaring an equitable lien upon the leasehold interest of appellant M. B. Finkelstein. By referring to appellee's contract with Roberts and wife, hereinbefore set out, it will be seen at once that appellee acquired no vested interest or right in the lease. It provides that in the event Johnson should succeed in canceling the lease then the land was to be leased to other parties for the best price obtainable, and that Johnson should be assigned one-fourth of the proceeds of the lease money, said "assignment" to be made and the money to be paid "at the time lease is executed." This contract was merely signed by Roberts and wife, and not acknowledged by either, and appellee's principal contention in this suit is that, inasmuch as the land was the separate property of the wife and homestead of both, an acknowledgment by both with a separate acknowledgment on the part of the wife was necessary in order to convey any interest in the land whatever.

So that, as stated, appellee, at least, is in no position to insist that by his contract with Roberts he acquired any vested interest in either the land or any leasehold right conveyed. Moreover, by the very terms of his contract with Roberts and wife, an "assignment" to appellee Johnson of any interest was to take place, not only after Johnson had succeeded in forfeiting the original lease, but also after the land had been again leased and money therefor received. It was then and not before, by the terms of his contract, that Johnson was to acquire a tangible, vested interest. Nor, as will be seen by a reference thereto, did the compromise agreement between Roberts and Finkelstein and A. D. Morton convey, or attempt to convey, any right or interest in the lease or land to appellee Johnson. Under such circumstances, we know of no authority that will support a decree in Johnson's favor for an equitable lien. While an attorney may doubtless assert and maintain a lien upon papers or property of a client in his possession, we do not understand that in this state an attorney has been given a general lien on a cause of action or judgment or money until collected and in his hands. See Whittaker v. Clarke, 33 Tex. 648; Casey v. March, 30 Tex. 180; Dutton v. Mason, 21 Tex. Civ. App. 389, 52 S. W. 651. In Trist v. Child, 88 U. S. (21 Wall.) 441, 22 L. Ed. 623, it was said:

"It is well settled that an order to pay a debt. out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee [citing cases]. * * * But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor."

The foregoing discussion, however, but brings us to the fundamental proposition in this case. It is apparent from the agreement between appellee and Roberts and wife that he was to receive compensation for his services only after a judgment through all the courts had been secured, forfeiting the original lease, and the land again leased to some other person. The contemplated forfeiture never in fact took place, nor can it be said with certainty when, if ever, this could have been done. Nor can it be said that at the time when a final judgment forfeiting the lease had been secured that the land could have again been leased for oil and gas for any sum, or, if so, in what sum. During this time, adjacent tests may have demonstrated that the land was valueless for oil and gas purposes, and not worth $300 or $400 an acre upon the theory of which appellee was permitted to recover. Appellee's whole contention, so far as based upon his agreement with Roberts and wife, must rest upon the proposition that the original lease by Roberts and wife to Finkelstein could certainly have been forfeited, and that hence the compromise of the action by Roberts and wife, participated in by Finkelstein, conferred upon appellee the right to sue and to recover the same as if he had been permitted to fulfill his part of the agreement.

[5] The majority are inclined to the view that, inasmuch as under our statutes a married woman cannot convey any interest in either the homestead or in her separate property without having been joined by her husband and having the instrument fully explained to her and acknowledged before a proper officer, and inasmuch as it has been held that the usual oil lease conveys an interest in the land, therefore the original lease at the time of its acknowledgment by Mrs. Roberts, having contained the blank for description, as hereinbefore stated, was inoperative, and that she could not by parol authorize any one to fill the blank, and that, the blank having been filled in the instance before us, and no subsequent acknowledgment of the lease having been made by the wife, the lease was entirely void. The writer, however, does not feel prepared to go so far under the circumstances of this case. While the contention of appellee and the position of the majority on this point is sustained by common-law authorities and by decision of some of the other states, a number of which are cited in behalf of appellee, the rule in Texas has not been enforced with such strictness. Threadgill v. Butler, 60 Tex. 599; Schleicher v. Runge, 37 S. W. 982; Henke v. Stacy, 25 Tex. Civ. App. 272, 61 S. W. 509, 28 L. Ed. 94; McCown v. Wheeler, 20 Tex. 373; Tarrant County v. McLemore (Sup.) 8 S. W. 94; Gray v. Fenimore (Com. App.) 215 S. W. 956.

Under our statutes, the wife has been given the sole management and control, and the right of disposition of her separate property when joined by her husband, and in the case under consideration it is undisputed that both Mr. Roberts and Mrs. Roberts directed L. C. Morton to take the lease and a deed to a Mr. King in the town of Stephenville, and there insert the proper description of the two tracts of land actually leased to Finkelstein. There is no pretense that the lease was not explained to Mrs. Roberts, nor is there any pretense that she did not intend to lease two of the tracts, and if a jury should find it to be true, as alleged by appellants, that L. C. Morton was without a personal interest, and that he took the lease to King as he was authorized to do by both Roberts and wife, as Roberts himself testified on the trial, then it should be said that Morton for that purpose was but the agent of Roberts and wife; and as King, the scrivener, in fact filled the

blank by the insertion of the proper description of the two tracts of land actually leased, the actual delivery to the grantee Finkelstein did not occur until after the lease was complete, and hence that a reacknowledgment by the wife was unnecessary. The mistake of the scrivener gave rise to a right on the part of Roberts and wife to have the lease corrected rather than forfeited, at least, as the writer thinks, the imperfect conveyance was properly subject to ratification; and it was undisputed that after the compromise agreement between Roberts and Finkelstein and A. D. Morton that Roberts and his wife did execute a new lease unobjectionable in form and effect, for the very purpose of curing the supposed illegality of the original lease, the only difference in the two instruments being that in the last the 3-acre tract of land was omitted in the description. In this connection, J. E. Roberts testified, while a witness on the stand, among other things:

"I told them to place the other two descriptions in the lease. * * * I turned the deed over to him (Morton) for the purpose of having the description of those two tracts of land inserted in the lease. * * * If it hadn't been for him trying to tie on the 3 acres, I never would have filed this suit. Because they tried to get this 3 acres of land I filed this suit against Morton and Finkelstein to cancel the lease."

There is no testimony pointed out that tends to show that either Morton or Finkelstein made any claim to the 3 acres of land mistakenly inserted in the first lease, or that they even knew that it had been so inserted until the institution of the suit by Roberts and wife. Under such circumstances, it would seem that the court, in order to administer a wholesome equity to all of the parties, would not go so far as to decree an absolute forfeiture of the alleged lease on the ground that the description of the land leased had not been actually included until after the acknowledgment.

[6-8] But regardless of the divergence of opinion noted, we all conclude that there are but two theories upon which appellee was entitled to recover: First. If the original lease was an absolute nullity, as the majority think, the breach of the agreement made by Roberts and wife not to compromise the suit without the consent of appellee would entitle appellee to a judgment against Roberts for damages. The wife, of course, was not bound by this agreement, she not having any general power to contract. But to render defendants liable for such breach of contract, it would be necessary for appellee to allege and show that they induced and brought about the compromise with intent to deprive appellee of his fee, for certainly Roberts and wife had a right to make the compromise they did, and appellee in no wise could have restrained them from doing so. In other words, they had the power, if they deemed it just and equitable to do so, to compromise the suit without appellee's consent, and their action in so doing amounted merely to a breach on J. E. Roberts' part of the agreement not to compromise. Appellants were not parties to this agreement, and they had the legal right, as it was their interest to do, to secure a settlement of the controversy, and they were in no sense liable for a breach by J. E. Roberts of his agreement with appellee Johnson, unless they acted therein with a wrongful purpose. Second. Appellee's only other remedy was upon the agreement made by appellants Finkelstein and A. D. Morton with J. E. Roberts and wife. This agreement was declared upon by appellee in the petition of intervention, and appellants cannot be bound thereon except in accordance with its terms. See Western Union Tel. Co. v. Douglass, 104 Tex. 66, 133 S. W. 877, 6 R. C. L. p. 886, § 273, in which it was said:

"A plaintiff who sues upon a contract executed by another for his benefit must, of course, accept the contract as it was made. He alleges its execution as a part of his case, and must succeed or fail upon its provisions."

"Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties."

The only part of the agreement of settlement between Roberts and Finkelstein and A. D. Morton that can be looked to as conferring a right upon appellee Johnson is in the second paragraph, quoted in an earlier part of this opinion. The first part of the agreement is clearly an agreement of indemnity to Roberts, and not available by Johnson. In the latter part, the agreement binds the defendants "to pay all claims as attorneys established against first party (Roberts) by suit or by compromise." By the compromise Roberts received the sum of $1,000, and a portion of this, under the terms of the compromise agreement, appellants agreed to pay, but no amount other than this has been "established" against Roberts or his wife. As to them the suit was dismissed, and by the judgment before us they were entirely discharged. So that it cannot be said, we think, that the judgment below is supported by the terms of appellants' compromise agreement.

We conclude that upon neither theory above suggested can the judgment below be upheld, and that it must be reversed, and the cause remanded for a new trial in accordance with the views expressed.