LASATER et al. v. JAMISON. (No. 6014.)

(Court of Civil Appeals of Texas. San Antonio. May 8, 1918. Rehearing Denied June 5, 1918.)

1. JUDGMENT ⊚⟞199(3)—JUDGMENT NOTWITHSTANDING VERDICT.

To be entitled to a judgment notwithstanding the verdict a party must be able to show that undisputed facts, other than those involved in the findings of the jury, entitle him to a judgment, even though the facts found by the jury are taken as true.

2. EVIDENCE ⊚⟞590—WEIGHT OF EVIDENCE—INTERESTED PARTY.

The unsupported testimony of an interested party may be disregarded by court or jury, especially where there are any circumstances tending to discredit it.

3. HUSBAND AND WIFE ⊚⟞270(9)—SALE BY WIFE—PURCHASER'S RELIANCE ON REPRESENTATIONS—QUESTION FOR JURY.

In a suit to recover state school surveys which had been purchased from the state by husband and wife, where plaintiff claimed under a deed from the husband and wife and defendant under a previous deed from the wife alone on her representations that she had been forced to leave her husband because of his treatment, and was selling her interest for her necessary maintenance, held on the evidence that whether defendant relied on such representations was for the jury.

4. HUSBAND AND WIFE ⊚⟞267(2)—COMMUNITY PROPERTY—CONVEYANCE BY WIFE—EFFECT.

The husband being by statute the managing head of the family, appointed to make conveyances of community property, a deed by the wife alone is void, unless the facts exist which create an exception in extreme cases.

5. HUSBAND AND WIFE ⊚⟞267(2)—CONVEYANCE BY WIFE—RIGHTS OF PURCHASER.

A wife has no power to convey the community property unless the husband has abandoned its administration, deserted her, and reduced her to the necessity of providing for herself and taking charge of the community property.

6. VENDOR AND PURCHASER ⊚⟞232(1) — POSSESSION—NOTICE.

Every person dealing with land must take notice of the actual possession.

7. HUSBAND AND WIFE ⊚⟞267(9)—CONVEYANCE BY WIFE — ESTOPPEL — REPRESENTATIONS.

There can be no estoppel by reason of representations of the wife as to her power to sell community property and convey by her deed alone, based on her husband's alleged abandonment, where at the time of the representations and conveyance the husband is in possession of the land and fulfilling his duties as custodian thereof.

8. HUSBAND AND WIFE ⊚⟞267(2)—DEED BY WIFE—RATIFICATION.

Where a married woman conveyed her interest in community land, her deed, being a nullity, could not be vitalized by her husband's subsequent acquiescence, but could only be ratified by an act by him having the essential elements of a conveyance.

9. TRIAL ⊚⟞350(2)—EVIDENCE—ISSUES.

In a suit to recover state school surveys which had been purchased by a husband and wife from the state, where plaintiff claimed under a deed from the husband and wife and defendant under a prior deed from the wife on her representation that she had been forced to leave her husband because of his treatment, and that she was selling her interest for her necessary support and maintenance, the submission of an issue as to whether the wife had just cause for leaving her husband was erroneous, as the answer would establish no issue in the case and the real issue was whether her husband had abandoned her.

10. APPEAL AND ERROR ⊚⟞1062(1)—HARMLESS ERROR—SUBMISSION OF ISSUE.

Error in submitting such issue and the answer thereto were immaterial, where there was no evidence justifying a finding of the husband's abandonment of the wife such as would authorize her to convey the community property, and where the answer to another issue, supported by the evidence, required a judgment for plaintiff.

11. HUSBAND AND WIFE ⊚⟞270(8)—CONVEYANCE BY WIFE—REPRESENTATIONS—BURDEN OF PROOF.

In such action, the burden of proof as to whether the wife had just cause for leaving the husband, as to whether it was necessary for her to sell her interest for her support, as to whether she was induced to execute and acknowledge a deed through the threats or fear of her husband, was upon defendant, but on the issue of the rental value of the lands for grazing purposes the burden was upon the plaintiff.

12. APPEAL AND ERROR ⊚⟞1067—HARMLESS ERROR—INSTRUCTION.

In such action, held, on the evidence, that defendant was not probably injured by reason of a failure to instruct the jury that the burden of proof as to the value of land for grazing purposes was upon the plaintiff.

13. APPEAL AND ERROR ⊚⟞930(3)—VERDICT—ISSUE—PRESUMPTION.

In a suit to recover state school surveys claimed by defendants under a deed from the wife alone, the contention, as to that part of the judgment awarding a recovery against defendant for rents, being that no issue was submitted as to length of time or quantity of land held, so that plaintiff could not recover rents, was without merit, where the evidence would justify the court in making findings on such issues such as, together with the finding of the jury as to rental value, would support the judgment for rent, in view of Rev. St. 1911, art. 1985, providing that an issue, not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to support such finding.

Appeal from District Court, Jim Wells County; V. W. Taylor, Judge.

Suit by S. S. Jamison against Ed. C. Lasater and others. Judgment for plaintiff, and against defendant Lasater for rents, etc., and defendants appeal. Affirmed.

G. R. Scott and Boone & Pope, all of Corpus Christi, W. W. McCampbell, of Alice, Dougherty & Dougherty, of Beeville, L. Broeter, of Alice, and G. C. Robinson, of Beeville, for appellants. James B. Wells and Harbert Davenport, both of Brownsville, and Jas. M. Taylor, of Corpus Christi, for appellee.

MOURSUND, J. Appellee sued Ed. C. Lasater, J. W. Garrison, Geo. Paden, A. Stade, Geo. Balzer, Jas. Ramey, and Joe M. Kilgore to recover state school survey No. 386, C. F. & M. C. R. R. Co., situated in Duval and Brooks counties. The venue of the suit was changed, by agreement, from Duval to Jim Wells county. Lasater dis-

⊚⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

claimed as to an undivided one half of the survey, and as to the other half answered by plea of not guilty and pleas of the statutes of limitation of three, five, and ten years. The other defendants disclaimed except as to small portions of the land, and as to such portions pleaded not guilty, and the statutes of limitation of three, five,. and ten years. The survey in controversy was purchased from the state by R. W. Peel during his marriage to Mrs. L. J. Peel, and they made their home on said land. Plaintiff, Jamison, claims under a deed duly executed by Peel and wife on February 8, 1909. Lasater claims under a deed to him by Mrs. Peel alone, for all of her right, title, and interest in said survey, executed on December 11, 1908, in consideration of $500. Mrs. Peel left their home on the land in controversy in September, 1908, and refused to live with her husband. They were not divorced until long after the conveyances above mentioned were made. The defendants other than Lasater claimed under him. The evidence failed to raise any issue of title by limitation. The case was submitted on special issues, which, with the answers thereto, are as follows:

"Q. 1. Did Mrs. L. J. Peel, at the time of her separation from her husband, R. W. Peel, have just cause for leaving him? A. We, the jury, answer No.

"Q. 2. Was the financial circumstances of Mrs. L. J. Peel, at the time she made the deed to Ed. C. Lasater, such that was necessary that she make said sale of such property for the purpose of supporting herself? A. We, the jury, answer No.

"Q. 3. Was Mrs. L. J. Peel induced to execute and acknowledge the deed in evidence to S. S. Jamison through threats or fear of her husband, R. W. Peel? A. We, the jury, answer No."

"Q. 5. What is the reasonable rental value of the lands in controversy in this suit for grazing purposes per acre per annum? A. We, the jury, answer: 20 cents per annum."

Judgment was entered in favor of plaintiff for all of said survey 386, and against Lasater for $338.10 as rents from January 1, 1910, to July 1, 1917. The defendants appealed.

By the first three assignments the following contentions are made: (1) That the evidence is undisputed that Mrs. Peel, through her agents, represented to Lasater that she had been forced to leave her husband by reason of his conduct toward her of such a nature as to constitute just cause for leaving him, and that she was in destitute circumstances, and that it was necessary for her to sell her interest in the land in controversy for her support and maintenance; (2) that Lasater believed such representations to be true; (3) that he relied thereon, and was induced thereby to accept a quitclaim deed from her to her interest in the land and pay her $500 for such conveyance; (4) that plaintiff had actual and constructive knowledge of the execution and delivery of said deed, and of the representations made to Lasater,

and that Lasater was induced thereby to accept the conveyance from Mrs. Peel, and claims under a deed by Peel and wife executed subsequent to the execution by her of the deed to Lasater. Assuming the proof to be as above stated, appellants' theory is that he acquired title by estoppel as against Mrs. Peel, and that such estoppel operates against Jamison, and therefore the latter cannot recover the half interest in the land claimed by Lasater.

The appellants did not request the submission to the jury of the issues covered by the foregoing statement, but, after the jury had returned its verdict, filed a motion, requesting the court to render judgment in their favor by reason of the matters above stated, which was overruled.

The trade between Mrs. Peel and Lasater was negotiated by Mr. Maupin, Lasater's foreman, in whose employ Mrs. Peel was at the time. Maupin testified that he conducted the negotiations at the instance of both parties. Mrs. Peel testified she asked a Mr. James to try to dispose of her interest; that after two or three months Maupin told her Lasater would buy the property. Mrs. Peel did not recollect anything particular that was said, other than that it would be a good thing to sell the property so that she could get necessaries. Maupin testified:

"She said the reason she wanted to sell was that she had lived with Peel and had had the property, and that Peel had run her off, and she was afraid he was going to beat her entirely out of it, and she would like to sell her interest, whatever she might have, to get something out of it."

He also testified:

"She said something about wanting to go back where her children were; she said she wanted to go back to North Dakota, or one of the Dakotas."

The foregoing constitutes all of his testimony as to what Mrs. Peel told him. He then testified that Mrs. Peel at that time had no other means that he knew of than "this property" other than the wages he paid her; that he told Mr. Lasater about all this.

Lasater testified that Maupin stated that Mr. Peel had run Mrs. Peel off the place, and that she was middle-aged and destitute, and wanted to get some money to go to some relatives in the North. He testified that the condition that Maupin stated Mrs. Peel was in is what induced him to make the purchase. Lasater owned land all around the land in controversy, and knew that Peel was living on said land with his children at the time he accepted the deed from Mrs. Peel. One of Peel's daughters and Mrs. Frith, the widowed daughter of Mrs. Peel, who had four or five children, also lived on the land, in a different house from the one used by Peel and some of his children.

Jamison testified that in behalf of Peel he offered to pay Lasater the $500 he had paid Mrs. Peel if he would reconvey, but

Lasater demanded $750. This was shortly after Mrs. Peel conveyed to Lasater.

[1-3] In order to be entitled to a judgment notwithstanding the verdict, a party must be able to show that undisputed facts, other than those involved in the findings of the jury, entitle him to a judgment, even though the facts found by the jury are taken as true. It is a well-known rule of law that the unsupported testimony of an interested party may be disregarded by a court or jury, and this is especially true when there are any circumstances which tend to discredit the same. The question whether Lasater relied on and was induced by the representations made to him to purchase from Mrs. Peel was one for the jury. In this connection it will be noticed that he did not claim that any representations with respect to the cause of her leaving her home induced him to buy, but that the condition Maupin stated she was in was what induced him to make the trade. There was no evidence that Maupin represented that it was necessary for Mrs. Peel to sell her interest in the land for her support and maintenance. The assignment is based on the theory that Lasater was told that Mrs. Peel left home on account of certain conduct of her husband which justified her in doing so, while Lasater's testimony is that he was told that Peel ran her off. There is absolutely no testimony that Jamison knew anything concerning what was said by Maupin to Lasater with regard to Mrs. Peel's troubles or financial condition. In view of the condition of the evidence the court was correct in overruling the motion. We are also of the opinion that had the state of the evidence been as contended for in the motion, it would have been the duty of the court, in view of the rules of law applicable thereto, to have overruled the motion.

[4] The husband is by statute made the managing head of the family, and appointed to make conveyances of community property, unless the same be the homestead, in which case the wife's joinder in the conveyance is required. An · exception has been established by our decisions, applicable in extreme cases.. This exception has been often stated and discussed, and is clearly defined in Railway v. Redeker, 75 Tex. 310, 12 S. W. 855, 16 Am. St. Rep. 887..

[5-7] Unless the facts exist which create the exception, a deed by the wife alone is void. But here it is contended that, though the deed is void, the wife can, by representations, estop herself from claiming the land she attempted to convey, and that the subsequent purchaser from the husband and wife, who deems it advisable to demand her signature because the home is situated upon the land, is in no better attitude than the wife as to the interest she attempted to convey by her sole deed.

The question whether a married woman can by representations with regard to her capacity to contract estop herself as to property conveyed by her alone is annotated in L. R. A. 1916C, and discussed by Mr. Bigelow in his work on Estoppel (6th Ed.) p. 621. In this state the courts have, in many instances, refused their aid to married women suing to recover land, when they have been guilty of a positive fraud. It has been held that if a married woman represents that she is unmarried, and thereby induces a person to purchase her separate property from her, she is estopped to recover the property sold by her. Keller v. Lindow, 133 S. W. 305; Jones' Estate v. Neal, 98 S. W. 417, 44 Tex. Civ. App. 412. . In such cases there was nothing to put the purchaser on guard with respect to the capacity of the woman to make a good conveyance, but when a person contracts with a woman whom he knows to be married, being chargeable with knowledge of the law, he knows he is dealing with her at his peril. He knows that the law does not vest in the wife the power to convey the community property unless the husband has abandoned the administration thereof, deserted his wife, and reduced her to the necessity of providing for herself and of taking care and charge of the community property. In this case the husband was in charge of the community property, residing thereon with his children, whom he was supporting, as well as his wife's daughter and grandchildren. Lasater knew that Peel was residing on the land, and under the law, even if he had not known it, every person dealing with land must take notice of an actual possession. We have found no case in which it has been held that a married woman can estop herself to claim community property conveyed by her alone, without her husband's consent, even though she falsely represents that her husband has abandoned her, and that she is in destitute circumstances. If the suit were by the wife alone, or by some one claiming under her only, and with full knowledge of her representations, the court might perhaps properly decline to permit it to be asserted that her deed was a nullity, but surely no estoppel would apply if the husband or his grantee sued to recover the land, and it is difficult to see how the joinder of the wife in the conveyance, procured in this case because of the fact that a part of the land had been impressed with the homestead character, could affect the rights of the purchaser. To say that the wife only conveyed her community interest in the property, and therefore the husband is not deprived of any rights, is fallacious. He has the absolute and sole right to sell and convey the property, and to give effect to the acts of his wife as against his grantee is to deprive him of his statutory rights. When she makes a quitclaim deed and conveys only her interest, which the purchaser understands to be her

203 S.W.—73

community half, the transaction on its face shows that she is not undertaking to act under the exception recognized by the court, which authorizes her to convey both halves. So far as this case is concerned, we deem it unnecessary to lay down the broad proposition that there can be no estoppel by reason of representations of the wife as to her power to sell community property, and we also deem it unnecessary to decide whether Jamison was chargeable with knowledge of her representations from the fact that he knew she had made a deed. We deem it sufficient for the purposes of this case to hold that there can be no estoppel by reason of representations of the wife when the husband is in possession of the land and fulfilling his duties as custodian thereof. The purchaser is by such possession put upon notice that the wife may not have the power to convey, and he cannot rely upon her statements any more than a buyer from the husband and wife of property occupied by them can rely upon their representation that it is not their homestead. To hold otherwise would practically abrogate the statute. The assignments are overruled.

[8] It will be appropriate to consider in this connection the theory of appellants that acquiescence on the part of Peel, after the conveyance by his wife to Lasater, would impart validity to her deed. Appellants complain of the failure of the court to submit the issue: "Did R. W. Peel, after the sale by Mrs. L. J. Peel to Ed. C. Lasater acquiesce in such sale?" There was no contention that Peel ratified his wife's act by any conveyance. Her deed being a nullity, it could not be vitalized by a subsequent acquiescence, but could only be ratified by an act having the essential elements of a conveyance. Merriman v. Blalack, 56 Tex. Civ. App. 594, 121 S. W. 552; Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882. The court therefore did not err in refusing to submit the issue requested.

[9] We are of the opinion that the court erred in submitting the first special issue, for the reason that the answer thereto would establish no fact or issue in the case, but merely the jury's opinion as to whether a sufficient ground existed to justify Mrs. Peel in leaving her husband. The real issue was whether her husband abandoned her, and if there was any evidence of such abandonment, we see no reason why the question should not be asked directly. In this case the wife left the husband, and we find no evidence in the record which would justify a finding that he abandoned her. Appellants rely upon Mrs. Peel's claim of certain misconduct on his part, and that he allowed his children to mistreat her, to establish abandonment of her on the theory that she was thereby driven away from home. If the matters relied on were deemed sufficient to constitute aban-

donment, if found to be true, the jury could be instructed to that effect, and their answer to the issue of abandonment made to depend on the finding as to such contentions. Or the question could have been asked whether Mrs. Peel left home on account of the matters thus relied on, thus leaving it to the court to determine the legal effect of such acts. It would not have been proper to ask the jury, as requested by defendants, to state the reason for Mrs. Peel leaving home. The answer would very likely be inconclusive and furnish no basis for a judgment.

[10] Although the court erred in submitting issue No. 1, and the answer thereto cannot be used as any basis for supporting the judgment, we consider the error an immaterial one for two reasons: First, there was no evidence justifying a finding of abandonment of the wife by the husband, such as would authorize her to convey the community property, which it must be remembered was in his possession; second, the answer of the jury to the second issue is supported by the evidence, and the finding thus made required the entry of judgment in favor of plaintiff.

[11, 12] The court instructed the jury as follows:

"The burden of proof rests upon the plaintiff to establish by a preponderance of the testimony the facts constituting his cause of action, and likewise the burden of proof rests upon the defendants to establish by a preponderance of the evidence the facts constituting their defense to plaintiff's cause of action."

This charge is not as clear as it should be. In a special issue case the court should point out specifically the issues as to which the burden of proof is upon the plaintiff and those as to which it is upon defendant. The burden of proof was upon defendant as to all issues submitted in this case except the fifth one, and there is no testimony pointed out which shows that Lasater was probably injured by reason of a failure to instruct the jury that the burden of proof as to such issue was on plaintiff. Maupin, Lasater's foreman, testified that 20 cents per acre was the reasonable rental value of the land for the time sued for, and Lasater testified that Maupin's statement was about correct. The error of the court in not making his instruction more specific is one which could not have injured the appellants, and the assignment complaining thereof is overruled.

[13] Complaint is made of that part of the judgment awarding a recovery against Lasater for rents, the contention being that, as no issue was submitted as to the length of time the land had been in possession of Lasater, and no issue as to the quantity of land so held, and no request made by either party for the submission of such issues, the plaintiff could not recover rent. There is no merit in the contention. Article 1985, R. S. 1911. No contention is made that there is no evi-

dence which would justify the court in making findings on the two issues, such as, together with the finding of the jury as to rental value, would support the judgment for rents rendered by the court.

All assignments of error are overruled, and the judgment is affirmed.