## FARMERS ROYALTY HOLDING CO. et al.
## v. JEFFUS.
## No. 2927.

Court of Civil Appeals of Texas. Beaumont.

May 1, 1936.

Rehearing Denied May 20, 1936.

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, Okl., J. W. Young, of Crockett, and Clayton Orn, of Fort Worth, for appellants.

Aldrich & Crook, of Crockett, for appellee.

O'QUINN, Justice.

Appellee, George M. Jeffus, brought this suit in the district court of Houston county, Tex., against appellants, Farmers Royalty Holding Company, G. T. Blankenship, and Farmers Mutual Royalty Syndicate, Inc., to cancel a mineral deed executed by appellee and his wife on May 11, 1932, conveying to Farmers Royalty Holding Company as undivided ⅜ths interest in the oil, gas, and other minerals in 218.4 acres of land (4 tracts) out of the J. A. Aughinbaugh, the J. J. Estrado, and M. J. Chamars leagues in Houston county, Tex., and to cancel a mineral deed they had executed on said May 11, 1932, conveying to appellant G. T. Blankenship an undivided ⅛th interest in all of the oil, gas, and other minerals in the above-described land; and to set aside and cancel a mineral deed executed by G. T. Blankenship on March 30, 1934, conveying to appellant Farmers Mutual Royalty Syndicate, Inc., an undivided ⅜₂ds in and to the oil, gas, and other minerals in said land.

As grounds for his action to cancel, appellee alleged: (a) That on May 11, 1932, he was the owner in fee simple of four certain tracts of land in Houston county, Tex., the first, 101.7 acres, more or less, and the second, 30 acres, more or less, portions of the J. A. Aughinbaugh league; and the third, 61¾ acres, more or

less, a part of the J. J. Estrado league; and the fourth, 25 acres, more or less, a part of the M. J. Chamars league; (b) that at the time, May 11, 1932, he and his wife executed and delivered the deed to the Farmers Royalty Holding Company, the land constituted their homestead, and said deed did not contain a description of any land whatever, but contained a blank space for the insertion of a description of the property intended to be conveyed, and therefore said deed was void; (c) that the signatures of appellee and his wife to the deeds sought to be canceled were obtained by the false and fraudulent representations of appellant Farmers Royalty Holding Company to the effect that said deed was a conveyance of only a portion of the royalty interest in said lands and that he would receive within 90 days a dividend check on same and every 90 days thereafter he would receive dividend checks, which representations were false and fraudulent and made for the purpose of deceiving and misleading appellee and his wife and of inducing them to execute said deed, and that they believed said representation and relying thereon did execute said conveyance; (d) that appellant Farmers Royalty Holding Company, and its agent securing said deed, confederating with the notary who took their acknowledgment to said deed, fraudulently represented to appellee and his wife that their executing said deed would in no way interfere with their leasing the whole of their said land for oil and gas purposes, and receive rentals therefor, and that the notary joined in such statement, which representation was false and fraudulent and made for the purpose of misleading and inducing them to execute said conveyance without reading same, and that he and his wife believed said false statement, and relying upon same did execute and deliver said deed without reading same, and that they did so because of said false and fraudulent representations; (e) that when the said conveyance was executed by him and his wife it did not contain the description of any land whatever, but that a blank space was left in said conveyance for the insertion of the property intended to be conveyed, and that after the delivery of said deed, without their knowledge or consent, appellant Farmers Royalty Holding Company fraudulently inserted in said blank space other and different property than that intended to be conveyed,

to wit, a tract of 61¾ acres which contained appellees' orchard and nursery, and which it was definitely understood and agreed was not to be included, and which fraudulent inclusion was a forgery and a fraud upon appellee and his wife, and rendered said deed void; (f) that the notary who took his and his wife's acknowledgment did not take his wife's acknowledgment in accordance with the requirements of the law in that he did not examine her separately and apart from her husband, and did not explain the instrument to her, and she did not acknowledge to him that she had executed said instrument willingly for the purposes therein expressed and that she did not wish to retract same, and that the land was the homestead of him and his said wife, wherefore said deed was void; (g) that appellee received no consideration for said deed other than 81 shares of stock in said Farmers Royalty Holding Company, which were then and at all times since worthless, wherefore the deed to the mineral interest conveyed by them was without consideration and should be canceled.

Appellee made substantially the same allegations as grounds for canceling the deed to G. T. Blankenship conveying to him a ⅛th of the oil, gas, and other minerals in the land. As grounds for canceling the deed of March 30, 1934, from G. T. Blankenship to Farmers Mutual Royalty Syndicate, Inc., conveying %2ds interest in the oil, gas, and other minerals in said lands, appellee alleged that such instrument created a cloud upon his title, which should be removed; that Blankenship and T. P. McLain were agents for and of the Farmers Mutual Royalty Syndicate, Inc., said Blankenship then and there and ever since being its president; and that Farmers Mutual Royalty Syndicate, Inc., at the time of the execution and delivery of such instrument had full knowledge that the deed to Blankenship had been obtained by false and fraudulent representations of said McLain.

Appellants answered by general demurrer, special exceptions, general denial, and specially that appellee was guilty of laches in bringing his suit, and Farmers Royalty Holding Company answered that it was the owner of ⅝ths of the minerals in the land described in appellee's petition by virtue of the deed executed and delivered to it by appellee and his wife on May 11, 1932, and also that it was the owner of a

½d interest in said minerals conveyed to it by G. T. Blankenship prior to the filing of this suit. Farmers Mutual Royalty Syndicate, Inc., answered that it was the owner of an undivided ⁹⁄₃₂ds interest in the minerals in said land by virtue of a conveyance of said interest to it by G. T. Blankenship prior to the filing of this suit by appellee. Further specially answering said appellants alleged that appellee had recognized, affirmed, and ratified and was, therefore, estopped to deny their ownership and interest in and to said mineral interest in said land by joining appellants in leasing said property for oil and gas purposes, consenting to and acquiescing in appellants receiving their proportionate part of lease rentals, and had waived any fraud, if same existed, in connection with the transaction of procuring conveyances from appellee and his wife to said mineral interest and in completing the description of the land mentioned in said deeds after they were executed and delivered.

Appellee by supplemental petition replied to the answer of appellants, defendants, denying the defensive matters pleaded and reiterated the various grounds formerly alleged for the cancellation of the several instruments.

The cause was tried to the court without a jury and judgment rendered canceling each of the deeds complained, and adjudging to appellee all of the oil, gas, and other minerals conveyed to appellants by said mineral deeds. The court filed his findings of fact and conclusions of law. There is in the record a statement of facts containing all of the evidence adduced, agreed to by the parties, and approved by the court.

■ The court found, and there is ample evidence to sustain the finding, that the deeds when executed and delivered to T. P. McLain, the agent of the Farmers Royalty Holding Company and of G. T. Blankenship, conveying ⅜ths of the mineral interest in the lands described in appellee's petition to said Farmers Royalty Holding Company, and ⅛th of the mineral interest in said lands to G. T. Blankenship, on May 11, 1932, contained no description of any land whatever, and concluded, as a matter of law, that because of the entire lack of description of any land, the deeds were void. That a conveyance of land, or of an interest in land, which does not contain a description of same is void, is too well settled to require discussion or citation of authority. But appellants say that Jeffus

and his wife at the time of executing the deeds authorized T. P. McLain, the agent of appellants, to fill in the description of the tracts of land a portion of the minerals in which had been conveyed, and that under such authority he did so, and hence the deeds were valid and effective. It was a contested fact as to whether the filling in was done at the time of the execution and delivery of the deeds, and the court, as stated above, found that at the time Jeffus and wife signed and acknowledged and delivered the deeds, there was no description of any lands whatever in said deeds. The record amply supports this finding. For want of description of the property conveyed, the deeds were absolutely void.

■ Appellants say that if the deeds were void, when delivered, that appellee ratified them afterwards by recognizing and affirming them in an oil lease. This contention is denied by appellee. The facts are that after the deeds were delivered McLain filled in the blank description and without the knowledge or consent of Jeffus and his wife included in the deed and description the 61¾ acres (the orchard tract) which it was agreed should not be included, and then filed the deeds for record, Jeffus and wife not knowing of the fraudulent inclusion of the orchard tract. Mrs. Jeffus died in September, 1932. The lands constituted the homestead of Jeffus and wife, and there were six minor children left by Mrs. Jeffus, and Jeffus continued to occupy the land as a homestead all of the time. It is not believed that the deeds being void for want of description when acknowledged and delivered could be ratified by the acts of Jeffus and thus given efficacy. Finkelstein v. Roberts (Tex.Civ. App.) 220 S.W. 401, 405 (writ dismissed); Lasater v. Jamison (Tex.Civ.App.) 203 S. W. 1151, 1154 (writ refused); Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552, 557 (writ refused); Drury v. Foster, 2 Wall. 24, 34, 17 L.Ed. 780, 781.

In Merriman v. Blalack, supra, Mrs. Merriman conveyed a tract of land which was her separate property without being joined by her husband. This deed was void. Later Mrs. Merriman became a feme sole. It was insisted that the void deed was ratified by Mrs. Merriman after she became a feme sole by the recital in a deed from her and others to a third party that the land had been conveyed by Mrs. Merriman to Henry Merriman. It was held that:

"The deed from Mrs. Merriman to Henry Merriman being clearly void, we do not think that this recital can be given effect as a confirmation, validation, or re-execution of it, so as to make it operative as a conveyance of Mrs. Merriman's title. This recital cannot operate as a conveyance or a re-execution of the former void deed." * * *

" 'Confirmation may make good a voidable or defeasible estate, but cannot operate upon an estate void in law, but only confirms its infirmity.' * * * There are no 'apt words of conveyance' from Mrs. Merriman, in the bare recital in the deed to Guzman, that the land had been conveyed by Elizabeth Merriman [Mrs. Merriman] to Henry Merriman, along with the other recitals as to the chain of title, so as to make it operate as a new grant, without which such recitals could not operate to impart to the void deed an efficacy it did not before possess." (writ refused)

In Lasater v. Jamison, supra, Mrs. Peel, a married woman, who at the time was separated, but not divorced from her husband, conveyed her interest in community land not being joined in the conveyance by her husband. Later, in a contest as to the title to the interest conveyed by Mrs. Peel, and in which it was contended that her husband after such conveyance had recognized and acquiesced in said conveyance, it was held (quoting from eighth paragraph of the syllabus of the opinion) "where a married woman conveyed her interest in community land, her deed, being a nullity, could not be vitalized by her husband's subsequent acquiesence, but could only be ratified by an act by him having the essential elements of a conveyance." (Writ refused.)

Finkelstein v. Roberts, supra, was a case somewhat similar in some of its parts to the instant case. There Roberts and wife had a rural homestead consisting of three tracts. They resided on one of the tracts containing 3 acres. They executed an oil lease on their lands, reserving from the lease the 3-acre tract. When the lease was drawn, signed, and acknowledged and delivered by Roberts and his wife, the description of the land leased was left blank, but they authorized the blank to be filled by the insertion of the land leased. Afterwards this blank description was filled in and the 3-acre tract was included along with the two tracts intended to be leased, this without their knowledge or consent. About a year afterwards Roberts discovered that his 3-acre home place had been included and he filed suit to cancel the lease contending that the lease having been executed, acknowledged, and delivered in blank form was a nullity. From a judgment in the case, an appeal was taken to the Fort Worth Court of Civil Appeals. The court held:

"The majority are inclined to the view that, inasmuch as under our statutes a married woman cannot convey any interest in either the homestead or in her separate property without having been joined by her husband and having the instrument fully explained to her and acknowledged before a proper officer, and inasmuch as it has been held that the usual oil lease conveys an interest in the land, therefore the original lease at the time of its acknowledgment by Mrs. Roberts, having contained the blank for description, as hereinbefore stated, was inoperative, and that she could not by parol authorize any one to fill the blank, and that, the blank having been filled in the instance before us, and no subsequent acknowledgment of the lease having been made by the wife, the lease was entirely void. The writer, however, does not feel prepared to go so far under the circumstances of this case. While the contention of appellee and the position of the majority on this point is sustained by common-law authorities and by decision of some of the other states, a number of which are cited in behalf of appellee, the rule in Texas has not been enforced with such strictness."

Citing Threadgill v. Butler, 60 Tex. 599; Schleicher v. Runge (Tex.Civ.App.) 37 S. W. 982; Henke v. Stacy, 25 Tex.Civ.App. 272, 61 S.W. 509; McCown v. Wheeler, 20 Tex. 372, 373; Tarrant County v. McLemore (Tex.Sup.) 8 S.W. 94; Gray v. Fennimore (Tex.Com.App.) 215 S.W. 956. Of the cases cited, in the main they were where the name of the grantee was left blank and authority given to fill in same. None of them were in cases where, as in the case there discussed, or in the instant case, the wife was a party to the instrument and her acknowledgment required to be taken as required by statute. Application to the Supreme Court for writ of error was dismissed.

In Drury v. Foster, supra, the Supreme Court of the United States said:

"But there are two insuperable objections to this view in the present case. First,

Mrs. Foster was disabled in law from delegating a person, either in writing or by parol, to fill up the blanks and deliver the mortgage; and, second, there could be no acknowledgment of the deed within the requisitions of the statute until the blanks were filled and the instrument complete. Till then there was no deed to be acknowledged. The act of the feme covert and of the officers were nullities, and the form of acknowledgment annexed as much waste paper as the blank mortgage itself, at the time of signing."

 Furthermore, it is not believed that the question of ratification was raised. The instrument, an oil lease executed by Jeffus on February 2, 1934, long after his wife's death, in which he was joined by appellants, contained this clause:

"10. All lessors herein agree that mineral deeds properly executed and now of record conveyed to G. T. Blankenship an undivided ⅛th interest, and to Farmers Royalty Holding Company a Delaware corporation, an undivided ⅜ths interest in and to all oil, gas and other minerals in, under, and upon the lands described herein."

This was the only and all of any reference to any instrument, executed by any person or persons, relative to the conveyance of any interest in the minerals in said land. For such reference in the lease to have amounted to a ratification of the void deeds of May 11, 1932, if they could at all be ratified, the ratification clause or portion of the instrument containing same must have been such as would amount to a present conveyance of the property involved, that is such as would then convey title within itself, which we deem the clause above referred to insufficient. Montgomery v. Hornberger, 16 Tex.Civ.App. 28, 40 S.W. 628 (writ refused); Lasater v. Jamison (Tex.Civ.App.) 203 S.W. 1151. And, too, it is not believed that Jeffus could ratify the void deeds in question. The land involved was the homestead of himself and wife and so occupied at the time the deeds were executed. His wife died after the delivery of the void deeds to appellants. She left minor children who inherited her half of the community homestead, and who at her death and continually since have resided with their father on the homestead. The homestead never having been abandoned by their father, but continuing to be his and their homestead, Jeffus could not by reference to the void

deeds as properly executed, if such reference in the oil lease sufficiently specifically referred to the deeds, give vitality to that which then and at all times since was dead —without effect—void.

We do not deem it necessary to discuss other grounds of invalidity authorizing the cancellation of the instruments in controversy, pleaded by appellee and found by the court in his favor. From what we have said, it follows that the judgment should be in all things affirmed and it is so ordered.

Affirmed.