Ruby Lee **GAYNIER, Individually and as Independent Executrix of the Estate of William Gaynier, deceased, Appellant,**

v.

**Reuben M. GINSBERG, et al., Appellees.**

**No. 05–85–00954–CV.**

Court of Appeals of Texas, Dallas.

July 23, 1986.

Rehearing Denied Sept. 2, 1986.

Rim Nall, David M. Stagner, Sherman, for appellant.

Ernest E. Figari, Jr., Thomas A. Graves, Alan Loewinshon, Sherri Turner Alexander, Dallas, for appellees.

Before AKIN, SCALES and GUILLOT, JJ.[1]

AKIN, Justice.

Ruby Lee Gaynier appeals from a summary judgment denying her recovery of title to certain property located in Dallas County, Texas from Reuben M. Ginsberg, George H. Cramer, Glenn Justice Mortgage Company, Inc., Donald J. Forman, and 505 North Ervay Building, a partnership or joint venture (hereinafter referred to collectively as the "joint venturers"). Gaynier alleges that Ginsberg forged a deed of the property to himself from Gaynier's deceased husband and then fraudulently procured an attempted ratification of the forged deed from her. The trial court granted the joint venturers' motion for summary judgment on ten independent theories. In thirteen points of error, Gaynier asserts that the trial court erred as to each of the ten grounds for summary judgment and further erred in deeming admitted by Gaynier certain requests for admissions. We agree with all of Gaynier's contentions; consequently, we reverse the judgment of the trial court.

Ginsberg, a Dallas attorney, met Gaynier's husband, the decedent, a real estate developer in Dallas, in approximately 1952 and began doing legal work for him. In addition, Ginsberg and the decedent became friends and participated in several business ventures together. Ginsberg prepared the decedent's will and was named co-trustee of a testamentary trust of which Gaynier was the beneficiary. After decedent's death in 1972, Ginsberg represented the estate and Gaynier as Independent Executrix of the estate.

Title to 505 North Ervay, the property here in issue, was held 75% by the decedent and 25% by Ginsberg until at least shortly before the decedent's death. A deed dated January 3, 1972, purportedly executed by decedent conveyed his 75% interest in the property to Ginsberg. It is this deed which Gaynier alleges was forged by Ginsberg, or possibly by some unknown third party. Decedent died March 11, and on March 27, 1972, Gaynier executed a deed prepared by Ginsberg which purported to ratify the January 3rd forged deed, and which also contained traditional words of conveyance of the property to Ginsberg. The March 27th deed was executed by Gaynier in her capac-

---

1. The Honorable Patrick C. Guillot concurred in the result prior to his resignation.

ity as Independent Executrix of decedent's estate, although she was not appointed to that position until April, 1972. Gaynier contends that she did not read the March 27th deed, that she signed it because Ginsberg asked her to and she trusted him, and that she never knew nor intended that it convey the subject property to Ginsberg.

On August 22, 1972, Gaynier signed a commitment letter from Southland Mortgage Co. as mortgagee acquiescing in a proposed sale of the subject property from Ginsberg to the joint venturers. Gaynier's signature purportedly indicated her "acceptance" thereof. This sale to the joint venturers closed on September 29, 1972, at which time Gaynier signed some documents, among them an amendment to a note originally executed by her husband and Ginsberg. All three deeds, that of January 3rd, March 27th, and September 29th, were filed of record on October 2, 1972.

Gaynier, within a few months of her husband's death, ceased to participate in the management of the subject property, relying, she asserts, on Ginsberg as her attorney and co-trustee to handle the business affairs of the estate and trust. She stated that she had never been involved in her husband's business dealings and that she relied completely on Ginsberg in this respect. She inquired of Ginsberg, at infrequent intervals, about why she was receiving no income from the office building on the subject property. He replied that he did not believe they ever would. There is some evidence that the property was then operating at a loss. Gaynier contends that Ginsberg in no way indicated to her that she did not own any interest in the building and thus could expect no income. Ginsberg explains these inquiries and responses by asserting that, under the September 29th conveyance to the joint venturers, Gaynier was to receive up to $18,000 from operating profits of the property. Since the property did not generate a positive

cash flow, he doubted she would ever receive that money.

In 1981 Jack Pogue called Gaynier to inquire about purchasing the property. She referred him to her attorney, Ginsberg, and asked him to call her back afterwards. Ginsberg informed Pogue that he owned 75% of the building and Glenn Justice owned 25% and that the property was not for sale.[2] When informed of this conversation, Gaynier researched the deed records, discovered the three deeds, and consulted with a new attorney. This suit was filed approximately four months later.

The trial court granted the joint venturers' motion for summary judgment on ten presumably independent grounds, as follows:

1. The March 27th and September 29th deeds were both independent conveyances of the property, regardless of the validity of the January 3rd deed.

2. Gaynier is barred by the statute of limitations from asserting her claims against Ginsberg because she knew of the transfers and alleged fraud and breach of fiduciary duty in 1972 or she knew facts sufficient to put a reasonable person on notice of the fraud and breach.

3. The conveyance of the property was made for consideration to Gaynier, including releases from liabilities and obligations.

4. Gaynier's claims are barred by the adverse possession of Ginsberg and the joint venture.

5. Gaynier's March 27th deed is effective because her later appointment as Independent Executrix relates back.

6. The doctrine of after-acquired title bars Gaynier's claims that the March 27th deed was ineffective.

7. Gaynier's claims that the March 27th deed is ineffective are also barred because she executed it, and, as a matter of law, by the defenses of estoppel, waiver and ratification.

**2.** These ownership percentages are according to Gaynier. Ginsberg's brief asserts that the interests in the joint venture were as follows: Gins-

berg 10%; Glenn Justice Mortgage Co. 40%; Cramer 40%; and Forman 10%.

8. Gaynier's claims are barred because, as a matter of law, no act of fraud or breach of fiduciary duty was committed by Ginsberg.

9. Gaynier is barred from attempting to cancel or rescind the deeds by laches because of her failure to act promptly.

10. The essential elements of Gaynier's claims in the present action have been negated as a matter of law by the undisputed evidence.

Although the above grounds for summary judgment are not completely unrelated, we must, and do, reverse the determination of the trial judge as to each one in order to reverse the grant of summary judgment.

### I. Fiduciary Relationship

Each of the above grounds for summary judgment rests, to some degree, on the trial court's apparent assumption that Ginsberg was not in a fiduciary relationship with Gaynier. We disagree with this presumption by the trial court and hold that a fact issue exists as to whether Ginsberg had fiduciary obligations to Gaynier.

■ We see three possible bases for a fiduciary relationship in this case:

1) if Ginsberg and Gaynier's co-ownership, if any, of the subject property were characterized as either a partnership or a joint venture;

2) if Ginsberg accepted his appointment as co-trustee of the testamentary trust of which Gaynier was beneficiary; and,

3) if Ginsberg were Gaynier's attorney either individually or in her capacity as Independent Executrix.

We do not mean to imply that some other basis for a confidential relationship giving rise to fiduciary obligations could not exist; we merely hold that there are fact issues as to the existence of at least the above three fiduciary relationships.

The record shows that Ginsberg signed a number of documents in his capacity as co-trustee of the trust. This is sufficient to raise a fact issue as to whether the testamentary trust was established and whether Ginsberg assumed his obligations as co-

trustee. As to the attorney-client relationship, there is no dispute that Ginsberg represented decedent for approximately twenty years until decedent's death in 1972. Thereafter, he admittedly represented the estate and Gaynier as independent executrix thereof; he also prepared at least the January 3rd and March 27th deeds. Finally, Mrs. Gaynier referred to Ginsberg as her attorney as late as 1981. We hold that this evidence is sufficient to raise a fact issue as to whether Ginsberg and Gaynier were in an attorney-client relationship at the times relevant transactions took place. Finally, in his brief before us, Ginsberg claims that he was a "joint venturer" with Gaynier in the subject property in 1972. The record reflects that Gaynier relied upon Ginsberg to conduct all the business dealings with regard to the subject property. We hold that this evidence is sufficient to raise a fact question as to whether Ginsberg and Gaynier were joint venturers or partners in their investment in the subject property.

■ If Gaynier can establish the existence of a fiduciary relationship, then the burden of proof will shift to Ginsberg to prove that the transactions in which he used his relationship with her to obtain her signature or agreement, if any, were fair to her. *Miller v. Miller,* 700 S.W.2d 941, 945–46 (Tex.App.—Dallas 1985, writ ref'd n.r. e.). Among the factors to be considered in deciding whether the transactions were fair to Gaynier are whether the fiduciary made a full disclosure, whether the consideration was adequate, whether the beneficiary had the benefit of independent advice, and whether the fiduciary has benefited or profited at the expense of the beneficiary. *Miller,* 700 S.W.2d at 947. We hold that, based on the record before us, Ginsberg has not proved the fairness of the transactions to Gaynier as a matter of law.

### II. The Grounds for Summary Judgment

■ Under the above analysis, some of the grounds for summary judgment can be quickly disposed of. Ground number three,

that the conveyance was made for consideration, is insufficient because Ginsberg, while he may have shown that Gaynier received some consideration for the transactions, has not established the adequacy of that consideration as a matter of law. Furthermore, adequacy of consideration is but one factor in determining the fairness of the transaction, and is not dispositive in itself.

■ Because Ginsberg has not established the fairness of the transactions to Gaynier, we also hold that ground number eight is insufficient. A fact issue exists as to whether there has been any fraud or breach of fiduciary duty by Ginsberg; consequently, summary judgment was improperly rendered on this ground.

■ We hold that ground number four is insufficient because Ginsberg may not claim adverse possession of the property if he was acting as co-trustee and the property was an asset of the estate. A party who has taken possession of the premises peacefully, as representative of the rightful owner or as a co-tenant, can only prevail on a claim for adverse possession by showing that notice of his repudiation of the relationship had been brought home to the owner or co-tenant before the statute of limitations will begin to run. *Todd v. Bruner*, 365 S.W.2d 155, 159 (Tex.1963). Ginsberg has failed to establish such a notice of his "repudiation" of Gaynier's ownership rights, as either trust beneficiary, partner, joint venturer, or co-tenant. Hence, his possession of the premises is not sufficient to establish his claim of adverse possession.

■ Furthermore, recordation of a deed from Ginsberg to the joint venture did not constitute notice to Gaynier of a repudiation, and the statutory period for adverse possession did not begin to run until she learned of the existence of the deed. *Keels v. Keels*, 427 S.W.2d 913, 916 (Tex.Civ.App. —Tyler 1968, no writ). Also, the fact that someone other than just Ginsberg alone was occupying the premises cannot establish the requisite notice as a matter of law.

First, the property was intended to be leased to third parties, so possession by others than Ginsberg would serve as no notice of a repudiation by him. *See Todd,* 365 S.W.2d at 159 (possession must have of such "unequivocal notoriety" as to convey notice of the adverse claim). *See also Radford v. Garza,* 586 S.W.2d 656, 662 (Tex. Civ.App.—Corpus Christi 1979, no writ) (mere possession of premises by person other than original tenant does not conclusively establish notice of repudiation). Consequently, if Ginsberg is unable to establish his claim of adverse possession, the joint venture will be unable to do so as well.

■ Ground number two, that the statute of limitations as to actions for fraud bars this action, is insufficient because Ginsberg has failed to establish Gaynier's actual knowledge of the transactions, the fraud or the breach of fiduciary duty, or Gaynier's knowledge of facts which would have put a reasonable person on such notice. If the fiduciary relationship is established, then Gaynier will *not* be presumed to know what she signed in reliance on that relationship. *See Thigpen v. Locke,* 363 S.W.2d 247, 252 (Tex.1963); *Miller,* 700 S.W.2d at 949; *Oar v. Davis,* 135 S.W. 710, 712–13 (Tex.Civ.App.—Dallas 1911), *aff'd,* 105 Tex. 479, 151 S.W. 794 (1912). Thus, we do not presume that Gaynier had notice of the March 27th deed, or of the contents of the "Confirmation Letter" from Southland. The summary judgment evidence reflects that Gaynier has stated that she has no recollection of signing these documents, that she trusted Ginsberg and would sign whatever he instructed her to sign, and that she remembers signing documents given to her by Ginsberg, which he told her related to the estate of her deceased husband, on or about the pertinent dates. These documents, therefore, are not enough to establish conclusively Gaynier's knowledge of the transactions, fraud, or breach, if a fiduciary relationship existed.

■ Furthermore, the act of filing these same documents in the public deed records of Dallas County, Texas does not

render them adequate notice to Gaynier. We recognize that, if bona fide purchasers were involved in this case, policy considerations might give rise to application of a different rule. But as to the fiduciary or fraudfeasor and non-bona fide purchasers under him, we hold that the recording of documents obtained through breach of fiduciary duty or fraud does not, alone, serve as notice to the beneficiary or defrauded person of the breach or fraud.

Nevertheless, Ginsberg contends that under *Andress v. Condos,* 672 S.W.2d 627, 631–32 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.), the summary judgment was properly rendered on this ground. We disagree. Although we agree with the holding in *Andress* that a fiduciary relationship does not negate the beneficiary's obligation to exercise reasonable diligence in discovering fraud by the fiduciary, *Andress* is distinguishable on its facts.

In *Andress,* the court held that partners in a law firm failed to raise a fact issue with regard to their diligence. But, contrary to Ginsberg's assertions, that court did not hold that the mere fact that documents were recorded in the deed records established lack of diligence by the beneficiary as a matter of law. Rather, the court looked to the fact that the partners, at the time the defrauding partner left the firm, suspected him of fraudulently withholding fees from the partnership. They examined their files but, inexplicably, failed to review the relevant client file. Here, there is no indication that Gaynier suspected Ginsberg of defrauding her or of breaching his fiduciary obligations prior to 1981. To the contrary, when she inquired of him regarding income from the property, he indicated that no income was expected yet. Although a fact issue may exist as to whether Gaynier had notice of sufficient facts that a reasonable beneficiary would have investigated further and found the filed deeds, that time has not been conclusively established in the record before us. Consequently, ground number two is insufficient to support the summary judgment.

For the same reasons we hold ground number nine is insufficient. The unreasonable delay necessary to prevail upon the affirmative defense of laches cannot be charged against party until the party's cause of action has matured upon denial or repudiation of her rights, *Dessommes v. Dessommes* 505 S.W.2d 673 (Tex.Civ. App.—Dallas, 1973, writ ref'd n.r.e.). Laches is not conclusively established so as to bar Gaynier's claims because she has not been conclusively shown to have had the requisite notice of the transaction, fraud, or breach before 1981. *Culver v. Pickens,* 142 Tex. 87, 176 S.W.2d 167, 170 (1944); *Stergios v. Forest Place Homeowners' Assoc., Inc.,* 651 S.W.2d 396, 401 (Tex.App.— Dallas 1983, writ ref'd n.r.e.). Her suit was filed within four months of her admitted discovery of the alleged fraud and breach. There is no showing of a change of position by Ginsberg during that period. Consequently, the equitable doctrine of laches does not apply.

We also hold ground numbers five, six, and seven, all of which concern the validity of the March 27th deed, insufficient. In ground number five, Gaynier's contends that "relation back" renders the deed valid although executed by Gaynier as independent executrix before she was so appointed. This rationale is irrelevant if the deed is invalid because obtained through breach of fiduciary duty or fraud. Similarly, the doctrine of after-acquired title, relied upon in ground number six, has relevance only to the state of Gaynier's title at the time the March 27th deed was executed. It cannot be the basis for a summary judgment if the fact issues, discussed above, are determined in Gaynier's favor.

Ground number seven is not a proper basis for summary judgment because, under the analysis above, Gaynier's execution of the deed cannot estop her from questioning its validity if a confidential relationship is shown to have existed between Ginsberg and her. Similarly, ratification, estoppel, and waiver are not sufficient to give validity to the January 3rd

deed, if it was indeed a forgery. *Pure Oil Co. v. Swindall,* 58 S.W.2d 7, 11 (Tex. Comm'n App.1933, holding approved); *Neal v. Pickett,* 280 S.W. 748, 750 (Tex. Comm'n App.1926, holding approved); *Turner v. Germany,* 94 S.W.2d 1177, 1181 (Tex.Civ.App.—Texarkana 1936), *rev'd on other grounds,* 132 Tex. 491, 123 S.W.2d 874 (1939).

▉▉▉ Ground number one is insufficient because the March 27th deed is not valid, and hence could not operate as an independent conveyance if Gaynier establishes the confidential relationship, and if Ginsberg fails to prove the fairness of the transaction. Alternatively, if the January 3rd deed is shown to be a forgery and the March 27th deed is merely an attempted "ratification" thereof, it is ineffective regardless of the relationship between Gaynier and Ginsberg at the time of its execution. *See Pure Oil,* 58 S.W.2d at 11; *Neal,* 280 S.W. at 750; *Turner,* 94 S.W.2d at 1181. Furthermore, even if the joint venturers were otherwise bona fide purchasers, which we do not hold, they could not obtain that status with a forged deed in their chain of title. *Pure Oil Co.,* 58 S.W.2d at 10; *Estate of O.C. McWhorter v. Wooten,* 593 S.W.2d 366, 370 (Tex.Civ.App. —Waco 1979), *aff'd on other grounds,* 622 S.W.2d 844 (1980). Because a forged deed is void *ab initio,* and not subject to being revived by mere ratification, *Pure Oil,* 58 S.W.2d at 11; *Neal,* 280 S.W. at 750; *Turner,* 94 S.W.2d at 1181, no one may claim good title from Gaynier if the January 3rd deed is a forgery and within the chain of title.

▉▉▉ Nevertheless, Ginsberg contends that the March 27th deed is effective as an independent conveyance of the property, and that the allegedly forged January 3rd deed is not within his chain of title. We note that none of the cases where void deeds were followed by deeds of independent conveyances which were held to be valid were cases where the void deeds were forgeries. *See Thompson v. Crim,* 132 Tex. 586, 126 S.W.2d 18, 20–21 (1939); *McLain v. Class,* 204 S.W.2d 668, 670 (Tex.

Civ.App.—Galveston 1947, writ ref'd n.r.e.); *Blankenship v. Mott,* 104 S.W.2d 607, 611–12 (Tex.Civ.App.—Beaumont 1937, writ dism'd); *Farmers Royalty Holding Co. v. Jeffers,* 94 S.W.2d 255, 259 (Tex.Civ.App.— Beaumont 1936, no writ). In those cases the deeds were void for lack of a valid property description or lack of capacity of the grantor. We have been cited to no case, nor have we found any, where a deed, void for forgery, was followed by a deed, drafted by the grantee, expressly claiming to be a ratification of the forged deed but also containing words of independent conveyance. Because the later deed expressly refers to and attempts to give validity to the prior forged deed, we hold that the later deed is required, as in the doctrine of ratification, to have been executed by the grantor with full knowledge of all material facts. *See Brock v. Jones,* 16 Tex. 461 (1856); *National Bank of Commerce v. May,* 583 S.W.2d 685, 690 (Tex.Civ.App.— Eastland 1979, writ ref'd n.r.e.). Hence, because it has not been conclusively established that Gaynier signed the March 27th deed with full knowledge that the January 3rd deed was a forgery, if it was, along with all other material facts, a fact issue exists as to the effect of the March 27th deed even if no confidential relationship existed between Gaynier and Ginsberg. This is at least the rule as to Ginsberg, who drafted the purported "ratification deed" and obtained Gaynier's signature thereon, and all those who take with Ginsberg's knowledge, whether actual or constructive.

▉▉▉ Finally, under ground number ten, the trial court held that the essential elements of Gaynier's claims have been negated by the undisputed summary judgment evidence. The only theory advanced in support of this ground, or that we can discern on our own, is that, even if a fiduciary relationship existed, Gaynier failed to dispute evidence by Ginsberg that he had made a full disclosure of all material facts to Gaynier prior to the transactions in question. This of course ignores the fact, discussed above, that Ginsberg did not disclose that the January 3rd deed was a

forgery, if it was. However, even had Ginsberg made full disclosures, disclosure is but one factor that Ginsberg would be required to show to demonstrate the fairness of the transactions to Gaynier. *Miller*, 700 S.W.2d at 947. Ginsberg has failed to conclusively establish either that no fiduciary relationship existed or that the transactions were, in all respects, fair to Gaynier. Consequently, he was not entitled to summary judgment.

### III. The Joint Venturers

Thus far, we have for the most part discussed the effect of Ginsberg's possible obligations to Gaynier only with respect to his claims to the property. But assuming, as we have held, that Ginsberg has not established his right to a summary judgment, may the joint venture of which he is a member and the other joint venturers prevail anyway? We hold that they cannot.

As joint venturers with Ginsberg, the other defendants are bound by the knowledge of Ginsberg. *See Napper v. Johnson*, 464 S.W.2d 496, 498 (Tex.Civ. App.—Waco 1971, writ ref'd n.r.e.) (partner's knowledge, or what he should have known, binding on his partner). *See also Dial Temp Air Conditioning Co. v. Faulhober*, 340 S.W.2d 82, 87 (Tex.Civ.App.— Dallas 1960, writ ref'd n.r.e.) (knowledge of attorney imputed to his client). The other defendants would be in a better legal position than their grantor only if they were bona fide purchasers for value, which would require that they have no knowledge, actual or constructive, of Gaynier's claims. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex.1984). Because Ginsberg's knowledge of the transactions is imputed to them, they cannot be bona fide purchasers if he had knowledge of the infirmity of his title. He would have such knowledge if he were guilty of the fraud or breach of fiduciary duty Gaynier alleges. Hence, 505 North Ervay Joint Venture's title to the property is only as good as Ginsberg's title under the January 3rd and March 27th deeds. Consequently, they may only prevail on summary judgment if Ginsberg does. Accordingly, we reverse also the summary judgment as to all the defendants.

### IV. The Admissions

In point of error thirteen, Gaynier asserts that the trial court erred in deeming certain requests for admissions admitted on the basis that Gaynier had not sufficiently answered the requests. We agree with Gaynier, and reverse the trial court's ruling on this issue as well. All of the deemed requests concerned the alleged records of Dr. F.T. Harrington, deceased, who had been Gaynier's psychiatrist following her husband's death. The requests all asked Gaynier to admit generally that certain papers were the records of Dr. Harrington which were maintained by him, which he prepared or which were created under his direction, which related to Gaynier, and which were referred to by Gaynier in an affidavit she had filed seeking a protective order for records of Dr. Harrington. The requests then quoted from the records and requested Gaynier to admit making a statement and that the statement "concern[ed] ... Gaynier's existing state of mind, emotion, sensation, or physical condition as of the date" the statement was made. Further, the requests asked Gaynier to admit that the statements were made for "purposes of medical diagnosis or treatment" and were reasonably pertinent thereto. Gaynier responded that she could not admit or deny making the statements because she could not remember saying the quoted words. These responses were left intact by the trial court, but it proceeded to deem her answers to the remainder of the questions as admissions. We agree with Gaynier that this was error.

As to the requests that Gaynier admit that certain records were those of Dr. Harrington, deceased, Gaynier replied that she did not have sufficient knowledge to answer those requests. Dr. Harrington was deceased and, after reasonable inquiry, Gaynier stated that she had no knowledge of whether those particular documents were

prepared and maintained by Dr. Harrington and whether they related to her. A party is not required to admit or deny facts of which he has no personal knowledge and has no reasonable means of obtaining such knowledge. *See Montes v. Lazzara Shipyard,* 657 S.W.2d 886, 888–89 (Tex.App.—Corpus Christi 1983, no writ) (requests for admissions as to reasonableness and necessity of medical expenses and genuine character of medical bills were improper); TEX. R.CIV.P. 169. Gaynier's response to these requests was proper and complete. She would have no more knowledge of Dr. Harrington's records than Ginsberg himself. Thus, these requests should not have been deemed admitted.

■■■ As to the remainder of the deemed admissions, once Gaynier's answers that she could not admit or deny making the statements were accepted, the facts presumed in all of the remaining questions could not be admitted. Consequently, the facts were not established, and Gaynier could not be required to admit the "application of law" to those facts, since no facts were established. TEX.R.CIV.P. 169. Further, we agree that many of the requests for admissions were improper. They were obviously an attempt to have Gaynier admit that the statements fall within an exception to the rule against hearsay and thus were admissible. Whether evidence is hearsay or not is a question of law for the court to decide. *See Montes,* 657 S.W.2d 886, 888–89.

We hold that Gaynier correctly and fully responded to Ginsberg's requests for admissions. Consequently, the trial court erred in deeming such admissions admitted.

Reversed and remanded.